**FILED**
**U.S. DISTRICT COURT**
**EASTERN DISTRICT ARKANSAS**

FEB 0 9 2023

**TAMMY H. DOWNS, CLERK**

By:_____

**DEP CLERK**

### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF ARKANSAS

**NATIONAL LABOR RELATIONS BOARD,**

    **Applicant**

  **v.**

**PHILANDER SMITH COLLEGE,**

    **Respondent**

Case No. 4 : 23 – mc – 1 – JM

This case assigned to District Judge **Moody**

## APPLICATION FOR ORDER ENFORCING
## SUBPOENA DUCES TECUM

  The National Labor Relations Board (the Board), an administrative agency of the Federal

Government, applies to this Court for an order compelling compliance with a subpoena duces

tecum that the Board issued and served on Philander Smith College. This application is made

under Section 11(2) of the National Labor Relations Act, as amended (29 U.S.C. 151 et seq.),

(the Act). In support of this application the Board states as follows:

    a. This Court has jurisdiction of the subject matter of the proceeding and of

Respondent by virtue of Section 11(2) of the Act (29 U.S.C. 161(2)). The subpoena was

issued within this judicial district and Respondent is an Arkansas corporation chartered

under the laws of the United States and licensed to conduct business in the State of

Arkansas, with a business location at 900 W. Daisy L. Gatson Bates Drive, Little Rock,

Arkansas. Respondent is engaged in business in this district.

    b. This application arises as a result of events in an unfair labor practice proceeding

currently pending before the Board pursuant to Section 10(b) of the Act. The Board process

began with a June 4, 2021, charge filed by Anthony Bolton Newkirk against Respondent

in Case 15-CA-278071, which alleged that Respondent violated the Act by, among other things, discharging employees Anthony Newkirk, Edwina Mosby, and Michael Turley in retaliation for their protected concerted activities. The charge in Case 15-CA-278071 was amended on January 21, 2022. Copies of the charge and first amended charge in Case 15-CA-278071 are attached as Exhibits A and B respectively. Each of these documents was prepared, filed, and served consistent with the requirements of Section 10(b) of the Act and of 29 C.F.R. Sections 102.9 and 102.10 of the Board's Rules and Regulations. These Rules and Regulations have been issued pursuant to Section 6 of the Act (29 U.S.C. 156) and have been published in the Federal Register (24 F.R. 9095), pursuant to the Administrative Procedure Act (5 U.S.C. 552). See 29 C.F.R. 102. This Court may take judicial notice of the Board's Rules and Regulations under 44 U.S.C. 1507.

c. In order to procure evidence during the investigation of the unfair labor practice charge, a representative of the then Acting General Counsel of the Board made a written request for and received a subpoena duces tecum from the Board. On July 18, 2022, a representative of General Counsel of the Board issued the subpoena duces tecum directing Respondent to produce certain records and papers relating to Respondent's alleged discrimination against Newkirk, Mosby, and Turley summarized as follows:

1) Respondent's employee handbook;

2) The complete personnel file for employees Anthony Newkirk, Edwina Mosby, and Michael Turley;

3) The complete disciplinary files for employees Anthony Newkirk, Edwina Mosby, and Michael Turley;

4) Termination documents issued to employees Anthony Newkirk, Edwina Mosby, and Michael Turley;

5) Documents which reflect the following information related to the discharge of employees Anthony Newkirk, Edwina Mosby, and Michael Turley: date of discharge, reasons for discharge, the date the Respondent determined it would discharge these employees, the name and titles of the individual(s) who notified these employees, the name and titles of the individual(s) who notified these employees of their discharge, and all information relied upon in determining that it would discharge these employees;

6) All documentation the Respondent used or relied upon in determining which employees would be laid off during the 2020-2021 school year;

7) Documents reflecting all options considered by the Respondent in lieu of discharging or laying off Anthony Newkirk, Edwina Mosby, and Michael Turley, including but not limited to furloughs, salary reductions, or layoffs;

8) Documents which reflect the name and titles of all employees who have been discharged from employment from January 1, 2019 to January 1, 2022 for the same or similar reason(s) that Anthony Newkirk, Edwina Mosby, and Michael Turley were discharged, including the date of discharge, circumstances surrounding the discharge, the reason why the employee was selected for discharge, the name and title of the person who made the decision to discharge these employees, and the name and title of the individual who notified these employees of their discharges;

9) Documents which reflect the name and titles of any employee who experienced an adverse employment action (i.e., furlough, salary reduction, layoff/recall, etc.) for the same/similar reason(s) [as] Anthony Newkirk, Edwina Mosby, and Michael Turley, including the specific type of adverse employment action which was issued, the date of the adverse employment action, the circumstances surrounding the adverse employment action, the reason why the employee was selected for the adverse employment action, the name and title of the person who made the decision to issue an adverse employment action, and the name and title of the individual who notified the employees of the adverse employment action;

10) Documents which reflect all faculty vacancy postings or other efforts to fill any positions which were vacated by any faculty during the 2020-2021 school year, including but not limited to documents which reflect efforts made by Respondent to seek the return of former faculty members to fill these positions;

11) For all employees hired by Respondent between May 1, 2020 and December 31, 2021, documents reflecting all the names, titles, dates of hire, and reason for employee's hire;

12) For all employees employed by Respondent from May 1, 2020 to December 21, 2020, documents reflecting the names, titles, addresses, phone numbers, and email addresses for all employees of Respondent.

A copy of the subpoena is attached as Exhibit C. The issuance of this subpoena is consistent with the requirements of Section 11(1) of the Act and Section 102.31(a) of the Board's Rules and Regulations.

d. The subpoena described above in paragraph c was served on Respondent by addressing and sending it by regular mail to Respondent's legal representatives in the investigation of the unfair labor practice charge in Case 15-CA-278071: J. Bruce Cross and Brett Taylor, Cross, Gunter, Witherspoon & Galchus P.C., 500 President Clinton Avenue, Suite 200, Little Rock, Arkansas 72201.

e. On July 29, 2022, after receiving the subpoena, Respondent filed a petition to revoke or modify the subpoena as provided by Section 11(1) of the Act and Section 102.31 of the Board's Rules and Regulations. On August 11, 2022, a representative of General Counsel filed its opposition to Respondent's petition to revoke or modify the subpoena. On August 18, 2022, Respondent filed its response to the General Counsel's opposition to Respondent's petition to revoke or modify subpoena. Respondent's petition to revoke was denied by the Board in an order dated October 19, 2022. Copies of the petition to revoke the subpoena, the General Counsel's opposition to Respondent's petition to revoke the subpoena, Respondent's response the General Counsel's opposition to Respondent's petition to revoke the subpoena, and the Board's order denying the petition to revoke are attached as Exhibits D, E, F, and G, respectively.

f. Following the Board's order denying its petition to revoke, a representative of the General Counsel e-mailed counsel for Respondent J. Bruce Cross and Brett Taylor

requesting that they comply with the Region's subpoena and provide the documents requested therein by November 4, 2022. To date, Respondent has produced no records responsive to the subpoena. A copy of the representative of the General Counsel's October 21, 2022 e-mail is attached as Exhibit H.

g.  Respondent's refusal to produce the subpoenaed documents, which are relevant to the Board's unfair labor practice investigation, constitutes contumacious conduct within the meaning of Section 11(2) of the Act. Furthermore, Respondent's conduct has impeded and continues to impede the unfair labor practice investigation before the Board and is preventing the Board from carrying out its duties and functions under the Act.

In view of Respondent's contumacious conduct, the Board respectfully requests:

1.  That an order to show cause issue directing Respondent to appear before this Court on a date specified in the order and to show cause why an order should not issue directing it to produce the subpoenaed documents described above;

2.  That, after considering arguments in response to the order to show cause, this Court issue an order requiring Respondent to obey the Board's subpoena duces tecum by providing the subpoenaed documents to the Board's Little Rock, Arkansas office within ten (10) calendar days of the entry of the Court's Order; the subpoenaed documents to be delivered to the Board's Little Rock Resident Office at National Labor Relations Board, Region 15, 700 W. Capitol Avenue, Suite 4429, Little Rock, Arkansas 72201;

3.  That Respondent be ordered to reimburse the Board for the costs and attorney's fees (calculated at the prevailing market rate) incurred in initiating and prosecuting this subpoena enforcement action;

4.  That in the event Respondent fails to comply with the Court's Order, the Court reserves

the right to impose contempt sanctions following a motion by the Board; and

5.  That the Applicant, National Labor Relations Board, have such other and further relief

as may be necessary and appropriate.

Dated:  February 9, 2023.

Respectfully submitted,

*Grayson Hinojosa*

Attorney for Applicant
Grayson Hinojosa
National Labor Relations Board, Region 15
400 West Capitol Avenue, Suite 4429
Little Rock, AR  72201
Telephone (501) 508-7092
Facsimile  (501) 324-5009
grayson.hinojosa@nlrb.gov
Arkansas Bar No. 2014251

FORM EXEMPT UNDER 44 U.S.C 3512

INTERNET
FORM NLRB-501
(2-08)

UNITED STATES OF AMERICA
NATIONAL LABOR RELATIONS BOARD
**CHARGE AGAINST EMPLOYER**

**DO NOT WRITE IN THIS SPACE**

| Case | Date Filed |
|------|-----------|
| 15-CA-278071 | June 4, 2021 |

**INSTRUCTIONS:**
File an original with NLRB Regional Director for the region in which the alleged unfair labor practice occurred or is occurring.

**1. EMPLOYER AGAINST WHOM CHARGE IS BROUGHT**

| a. Name of Employer | b. Tel. No. |
|---|---|
| Philander Smith College | (501) 370-5275 |

c. Cell No.           .

f. Fax No.

| d. Address *(Street, city, state, and ZIP code)* | e. Employer Representative |
|---|---|
| 900 West Daisy L Gatson Bates Drive<br>AR Little Rock 72202 | Roderick L. Smothers Sr.<br>President |

g. e-Mail          president@philander.edu

h. Number of workers employed       165

| i. Type of Establishment *(factory, mine, wholesaler, etc.)*<br>Others | j. Identify principal product or service<br>Higher Education |
|---|---|

k. The above-named employer has engaged in and is engaging in unfair labor practices within the meaning of section 8(a), subsections (1) and *(list subsections)* 1 _____ of the National Labor Relations Act, and these unfair labor practices are practices affecting commerce within the meaning of the Act, or these unfair labor practices are unfair practices affecting commerce within the meaning of the Act and the Postal Reorganization Act.

2. Basis of the Charge *(set forth a clear and concise statement of the facts constituting the alleged unfair labor practices)*

--See additional page--

**RECEIVED**
By Pamla Robertson at 11:20 am, Jun 04, 2021

3. Full name of party filing charge *(if labor organization, give full name, including local name and number)*
Anthony Bolton Newkirk               Title:

| 4a. Address *(Street and number, city, state, and ZIP code)* | 4b. Tel. No. (501) 374-4650 |
|---|---|
| 1301 Silverwood Trail<br>AR North Little Rock 72116 | 4c. Cell No. (501) 313-9866 |
| | 4d. Fax No. |
| | 4e. e-Mail   newkirk1938@hotmail.com |

5. Full name of national or international labor organization of which it is an affiliate or constituent unit *(to be filled in when charge is filed by a labor organization)*

**6. DECLARATION**
I declare that I have read the above charge and that the statements are true to the best of my knowledge and belief.

By _Anthony B Newkirk_     Anthony Bolton Newkirk
*(signature of representative or person making charge)*     Title: _____
*(Print/type name and title or office, if any)*

Address   1301 Silverwood Trail
North Little Rock AR 72116

06/02/2021 05:57:42 PM
*(date)*

| Tel. No. (501) 374-4650 |
| Office, if any, Cell No. (501) 313-9866 |
| Fax No. |
| e-Mail   newkirk1938@hotmail.com |

**WILLFUL FALSE STATEMENTS ON THIS CHARGE CAN BE PUNISHED BY FINE AND IMPRISONMENT (U.S. CODE, TITLE 18, SECTION 1001)**
**PRIVACY ACT STATEMENT**
Solicitation of the information on this form is authorized by the National Labor Relations Act (NLRA), 29 U.S.C. § 151 *et seq.* The principal use of the information is to assist the National Labor Relations Board (NLRB) in processing unfair labor practice and related proceedings or litigation. The routine uses for the information are fully set forth in the Federal Register, 71 Fed. Reg. 74942-43 (Dec. 13, 2006). The NLRB will further explain these uses upon request. Disclosure of this information to the NLRB is voluntary; however, failure to supply the information will cause the NLRB to decline to invoke its processes.

**Exhibit A**

Case No. 15-CA-278071

## Basis of the Charge

**8(a)(1)**

Within the previous six months, the Employer discharged an employee(s) because the employee(s) engaged in protected concerted activities by, inter alia, protesting terms and conditions of employment and in order to discourage employees from engaging in protected concerted activities.

| Name of employee discharged | Approximate date of discharge |
|---|---|
| Anthony Newkirk, Edwina Mosby, Michael Turley,etal | 12/10/2020 |

**8(a)(1)**

Within the previous six months, the Employer disciplined or retaliated against an employee(s) because the employee(s) engaged in protected concerted activities by, inter alia, discussing wages, hours, or other terms and conditions of employment and in order to discourage employees from engaging in protected concerted activities.

| Name of employee disciplined/retaliated against | Type of discipline/retaliation | Approximate date of discipline/retaliation |
|---|---|---|
| Anthony Newkirk, Edwina Mosby, Michael Turley,etal | Discharge | 12/10/2020 |

**8(a)(1)**

Within the previous six months, the Employer disciplined or retaliated against an employee(s) because the employee(s) engaged in protected concerted activities by, inter alia, protesting terms and conditions of employment and in order to discourage employees from engaging in protected concerted activities.

| Name of employee disciplined/retaliated against | Type of discipline/retaliation | Approximate date of discipline/retaliation |
|---|---|---|
| Anthony Newkirk, Edwina Mosby, Michael Turley,etal | Discharge | 12/10/2020 |

**RECEIVED**
By Pamla Robertson at 11:21 am, Jun 04, 2021

Form NLRB - 501 (3-21)

UNITED STATES OF AMERICA
NATIONAL LABOR RELATIONS BOARD
**FIRST AMENDED CHARGE AGAINST EMPLOYER**

**INSTRUCTIONS:**

| DO NOT WRITE IN THIS SPACE | |
|---|---|
| Case | Date Filed |
| 15-CA-278071 | January 21, 2022 |

File an original with NLRB Regional Director for the region in which the alleged unfair labor practice occurred or is occurring.

**1. EMPLOYER AGAINST WHOM CHARGE IS BROUGHT**

| a. Name of Employer <br> Philander Smith College | | b. Tel. No. <br> (501)370-5275 |
|---|---|---|
| | | c. Cell No. |
| d. Address (*Street, city, state, and ZIP code*) <br> 900 West Daisy L Gatson Bates Drive, Little Rock, AR 72202 | e. Employer Representative <br> Roderick L. Smothers SR. <br> President | f. Fax No. |
| | | g. e-mail <br> president@philander.edu |
| | | h. Number of Workers Employed |
| i. Type of Establishment (*factory, mine, wholesaler, etc.*) <br> College | j. Identify Principal Product or Service <br><br> Higher Education | |

l. The above-named employer has engaged in and is engaging in unfair labor practices within the meaning of section 8(a), subsections (1) of the National Labor Relations Act, and these unfair labor practices are practices affecting commerce within the meaning of the Act, or these unfair labor practices are practices affecting commerce within the meaning of the Act and the Postal Reorganization Act.

2. Basis of the Charge (*set forth a clear and concise statement of the facts constituting the alleged unfair labor practices*)

On or about December 10, 2020, the Employer discriminated against employees Anthony Newkirk, Edwina Mosby, and Michael Turley by discharging them in retaliation for and/or in order to discourage protected concerted activities.

| 3. Full name of party filing charge (*if labor organization, give full name, including local name and number*) <br> Anthony Bolton Newkirk | |
|---|---|
| 4a. Address (*Street and number, city, state, and ZIP code*) <br> 1301 Silverwood Trail, North Little Rock, AR 72116 | 4b. Tel. No. <br> (501)374-4650 |
| | 4c. Cell No. <br> (501)313-9866 |
| | 4d. Fax No. |
| | 4e. e-mail <br> newkirk1938@hotmail.com |

5. Full name of national or international labor organization of which it is an affiliate or constituent unit (*to be filled in when charge is filed by a labor organization*)

| 6. DECLARATION <br> I declare that I have read the above charge and that the statements are true to the best of my knowledge and belief. | | Tel. No. <br> (501)374-4650 |
|---|---|---|
| | | Office, if any. Cell No. <br> (501)313-9866 |
| (signature of representative or person making charge) | Anthony Bolton Newkirk, an individual <br> (Print/type name and title or office, if any) | Fax No. |
| Address: 1301 Silverwood Trail, North Little Rock, AR 72116 | Date: January 21, 2022 | e-mail <br> newkirk1938@hotmail.com |

**WILLFUL FALSE STATEMENTS ON THIS CHARGE CAN BE PUNISHED BY FINE AND IMPRISONMENT (U.S. CODE, TITLE 18, SECTION 1001)**
**PRIVACY ACT STATEMENT**
Solicitation of the information on this form is authorized by the National Labor Relations Act (NLRA), 29 U.S.C. § 151 *et seq.* The principal use of the information is to assist the National Labor Relations Board (NLRB) in processing unfair labor practice and related proceedings or litigation. The routine uses for the information are fully set forth in the Federal Register, 71 Fed. Reg. 74942-43 (Dec. 13, 2006). The NLRB will further explain these uses upon request. Disclosure of this information to the NLRB is voluntary; however, failure to supply the information will cause the NLRB to decline to invoke its processes.

**Exhibit B**

**UNITED STATES GOVERNMENT**
**NATIONAL LABOR RELATIONS BOARD**

REGION 15                                            Agency Website: www.nlrb.gov
600 South Maestri Place – 7th Floor                  Telephone: (504)589-6362
New Orleans, LA 70130-3413                           Fax: (504)589-4069

Agent's Direct Dial: (504)321-9492

July 18, 2022

J. Bruce Cross
CROSS, GUNTER, WITHERSPOON
& GALCHUS P.C.
500 President Clinton Ave
Ste 200
Little Rock, AR 72201-1754

Brett Taylor, Attorney
CROSS, GUNTER, WITHERSPOON
& GALCHUS P.C.
500 President Clinton Ave
Ste 200
Little Rock, AR 72201-1754

Re:    Philander Smith College
       Case 15-CA-278071

Dear Mr. Cross and Mr. Taylor:

Enclosed, please find a subpoena requiring your client to provide certain documents described in the subpoena. The documents requested will assist the Region in its investigation and in determining the merits of the above-captioned charges.

While the subpoena requires your client to appear before an Agent of the National Labor Relations Board on August 2, 2022 at 10:00 AM CT at the National Labor Relations Board office located at 425 West Capitol Avenue, Suite 4429, Little Rock, Arkansas 72201 to produce the documents, the documents may be submitted via delivery service by the deadline outlined in the subpoena to our office located at 600 South Maestri Place, 7th Floor, New Orleans, LA 70130.

I look forward to working with you on this matter in a constructive and cooperative manner. After you have had a chance to examine the subpoena, please contact me with any questions you may have by telephone, (504)321-9492, or e-mail, jordan.raby@nlrb.gov. Thank you for your prompt attention to this matter.

Very truly yours,

/s/

JORDAN RABY
Field Examiner

**Exhibit C**

FORM NLRB-31

# SUBPOENA DUCES TECUM

## UNITED STATES OF AMERICA
## NATIONAL LABOR RELATIONS BOARD

Custodian of Records, Philander Smith College

**To**  900 West Daisy L. Gatson Bates Dr., Little Rock AR 72202

As requested by   Jordan A. Raby, on behalf of the General Counsel

whose address is   600 South Maestri Place, 7th Floor, New Orleans, Louisiana 70130-3413

| (Street) | (City) | (State) | (ZIP) |

YOU ARE HEREBY REQUIRED AND DIRECTED TO APPEAR BEFORE   the Regional Director or his/her designee

of the National Labor Relations Board

at   National Labor Relations Board, 425 West Capitol Avenue, Suite 4429

In the City of   Little Rock, AR 72201

on   August 2, 2022                                    at   10:00 a.m. (CST)   or any adjourned

or rescheduled date to testify in

Philander Smith College
Case No.15-CA-278071
(Case Name and Number)

And you are hereby required to bring with you and produce at said time and place the following books, records, correspondence, and documents:

## SEE ATTACHMENT

If you do not intend to comply with the subpoena, within 5 days (excluding intermediate Saturdays, Sundays, and holidays) after the date the subpoena is received, you must petition in writing to revoke the subpoena. Unless filed through the Board's E-Filing system, the petition to revoke must be received on or before the official closing time of the receiving office on the last day for filing. If filed through the Board's E-Filing system, it may be filed up to 11:59 pm in the local time zone of the receiving office on the last day for filing. Prior to a hearing, the petition to revoke should be filed with the Regional Director; during a hearing, it should be filed with the Hearing Officer or Administrative Law Judge conducting the hearing. See Board's Rules and Regulations, 29 C.F.R Section 102.31(b) (unfair labor practice proceedings) and/or 29 C.F.R. Section 102.66(c) (representation proceedings) and 29 C.F.R Section 102.111(a)(1) and 102.111(b)(3) (time computation). Failure to follow these rules may result in the loss of any ability to raise objections to the subpoena in court.

**B-1-1GJT71D**

Under the seal of the National Labor Relations Board, and by direction of the Board, this Subpoena is

Issued at   New Orleans, LA

Dated:   July 18, 2022

*Lauren McFerran*

Lauren McFerran, Chairman

**NOTICE TO WITNESS.** Witness fees for attendance, subsistence, and mileage under this subpoena are payable by the party at whose request the witness is subpoenaed. A witness appearing at the request of the General Counsel of the National Labor Relations Board shall submit this subpoena with the voucher when claiming reimbursement.

## PRIVACY ACT STATEMENT

Solicitation of the information on this form is authorized by the National Labor Relations Act (NLRA), 29 U.S.C. § 151 *et seq.* The principal use of the information is to assist the National Labor Relations Board (NLRB) in processing representation and/or unfair labor proceedings and related proceedings or litigation. The routine uses for the information are fully set forth in the Federal Register, 71 Fed. Reg. 74942-43 (Dec. 13, 2006). The NLRB will further explain these uses upon request. Disclosure of this information to the NLRB is mandatory in that failure to supply the information may cause the NLRB to seek enforcement of the subpoena in federal court.

**ATTACHMENT**

## DEFINITIONS AND INSTRUCTIONS

a. **"Document"** means any existing printed, typewritten or otherwise recorded material of whatever character, records stored on computer or electronically, records kept on microfiche or written by hand or produced by hand and graphic material, including without limitation, checks, cancelled checks, computer hard drives, discs and/or files and all data contained therein, computer printouts, E-mail communications and records, any marginal or "post-it" or "sticky pad" comments appearing on or with documents, licenses, files, letters, facsimile transmissions, memoranda, telegrams, minutes, notes, contracts, agreements, transcripts, diaries, appointment books, reports, records, payroll records, books, lists, logs, worksheets, ledgers, summaries of records of telephone conversations, summaries of records of personal conversations, interviews, meetings, accountants' or bookkeepers' work papers, records of meetings or conference reports, drafts, work papers, calendars, interoffice communications, financial statements, inventories, news reports, periodicals, press releases, graphs, charts, advertisements, statements, affidavits, photographs, negatives, slides, disks, reels, microfilm, audio or video tapes and any duplicate copies of any such material in the possession of, control of, or available to the subpoenaed party, or any agent, representative or other person acting in cooperation with, in concert with or on behalf of the subpoenaed party.

b. "Respondent" means Philander Smith College.

c. "Respondent's facility" means the facility located at 900 West Daisy L. Gatson Bates Drive, Little Rock, Arkansas 72202.

d. "Person" or "persons" means natural persons, corporations, limited liability companies, partnerships, sole proprietorships, associations, organizations, trusts, joint ventures, groups of natural persons or other organizations, or any other kind of entity.

e. "Period covered by this subpoena" means the period from January 1, 2020, to December 31, 2021, and the subpoena seeks only documents from that period unless another period is specified. This subpoena request is continuing in character and if additional responsive documents come to your attention after the date of production, such documents must be promptly produced.

f. Any copies of documents that are different in any way from the original, such as by interlineation, receipt stamp, notation, or indication of copies sent or received, are considered original documents and must be produced separately from the originals.

g. If any document covered by this subpoena contains codes or classifications, all documents explaining or defining the codes or classifications used in the document must also be produced.

h.  Electronically stored information should be produced in the form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

i.  All documents produced pursuant to this subpoena should be presented as they are kept in the usual course of business or organized by the subpoena paragraph to which the document or set of documents is responsive.

j.  This subpoena applies to documents in your possession, custody, or control.

k.  If a claim of privilege is made as to any document which is the subject of this subpoena, a claim of privilege must be expressly made and you must describe the nature of the withheld document, communication, or tangible thing in a manner that, without revealing information itself privileged or protected, will enable an assessment of the claim to be made.

l.  Unless otherwise stated, this subpoena does not supersede, revoke or cancel any other subpoena(s) previously issued in this proceeding.

# DOCUMENTS TO BE PRODUCED

1. Respondent's Employee Handbook.
2. The complete personnel file for employees Anthony Newkirk, Edwina Mosby, and Michael Turley.
3. The complete disciplinary files for employees Anthony Newkirk, Edwina Mosby, and Michael Turley
4. Termination documents issued to employees Anthony Newkirk, Edwina Mosby, and Michael Turley.
5. Documents which reflect the following information related to the discharge of employees Anthony Newkirk, Edwina Mosby, and Michael Turley: date of discharge, reason(s) for discharge, the date that Respondent determined it would discharge these employees, the name and title of the individual(s) who made the decision to discharge these employees, the name and titles of the individual(s) who notified these employees of their discharge, and all information relied upon in determining that it would discharge these employees.
6. All documentation the Respondent used or relied upon in determining which employees would be laid off during the 2020-2021 school year.
7. Documents reflecting all options considered by the Respondent in lieu of discharging or laying off Anthony Newkirk, Edwina Mosby, and Michael Turley, including but not limited to furloughs, salary reductions, or layoffs.
8. Documents which reflect the name and titles of all employees who have been discharged from employment from January 1, 2019 to January 1, 2022 for the same or similar reason(s) that Anthony Newkirk, Edwina Mosby, and Michael Turley were discharged, including the date of discharge, circumstances surrounding the discharge, the reason why the employee was selected for discharge, the name and title of the person who made the decision to discharge these employees, and the name and title of the individual who notified these employees of their discharges.
9. Documents which reflect the name and titles of any employee who experienced an adverse employment action (i.e., furlough, salary reduction, layoff/recall, etc.) for the same/similar reason(s) Anthony Newkirk, Edwina Mosby, and Michael Turley, including the specific type of adverse employment action which was issued, the date of the adverse employment action, the circumstances surrounding the adverse employment action, the reason why the employee was selected for the adverse employment action, the name and title of the person who made the decision to issue an adverse employment action, and the name and title of the individual who notified the employees of the adverse employment action.
10. Documents which reflect all faculty vacancy postings or other efforts to fill any positions which were vacated by any faculty during the 2020-2021 school year, including but not limited to documents which reflect efforts made by Respondent to seek the return of former faculty members to fill these positions.
11. For all employees hired by Respondent between May 1, 2020, and December 31, 2021, documents reflecting all the names, titles, dates of hire, and reason for employee's hire.
12. For all employees employed by Respondent from May 1, 2020, to December 31, 2020, documents reflecting the names, titles, addresses, phone numbers, and email addresses for all employees of Respondent.

Print | Route | Save As | Save | To Catalog

FORM NLRB-5494(E)
(5-13)

**CLAIMS FOR WITNESS ATTENDANCE FEES, TRAVEL, AND MISCELLANEOUS EXPENSES**

## PART I - ATTENDANCE CERTIFICATION

**1. General Information**

**2. Witness Name** Custodian of Records, Philander Smith College

**3. Witness Address**

Street 900 West Daisy L. Gaston Bates Drive

**4.** City Little Rock

c. Social Security No. _____

d. Case Name Philander Smith College _____

e. Case Number 15-CA-278071, et al.

f. State AR            Zip 72202

**2. Travel and Attendance Information**

a. Dates of Travel From Residence to Case Location:   From_____   To _____

b. Dates of Travel From Case Location to Residence:   From_____   To _____

c. Dates of Attendance:   From_____   To _____

**3.**                    **NLRB Certification**

I certify that the witness named above attended in the case or matter indicated and is entitled to the statutory allowances for attendance and travel.

_____        _____        _____
(Signature)                              (Title)                      (Date)

## PART II - WITNESS CLAIM FOR FEES AND ALLOWANCES

| | Rate | No. of Days | Amount Claimed | Totals |
|---|---|---|---|---|
| **1. Attendance Fees** | | | | |
| a. Fact, Pretrial Conference & Detained Witness | $40.00 | _____ | _____ | |
| Total Attendance Fees............................ | | | | _____ |
| **2. Mileage Allowance** Indicate type of privately owned vehicle: | Rate | No. of Miles | Amount Claimed | |
| ☐ (auto) ☐ (motorcycle) ☐ (airplane) | $0.57 | | | |
| a. From Residence to Case Location (and Return) | | | | |
| b. From Hotel/Motel to Court (or Court to Hotel/Motel) | _____ | _____ | _____ | |
| Total Mileage Allowance.......................... | | | | _____ |
| **3. Subsistence** Per Diem Rate:_____ | Rate | No. of Days | Amount Claimed | |
| a. Meals | _____ | _____ | _____ | |
| b. Lodging (Receipt Required) | _____ | _____ | _____ | |
| Total Subsistence Allowance..................... | | | | _____ |
| **4. Miscellaneous Allowance** (See Item 8 Below) | | | Amount Claimed | |
| a. Common Carrier | | | | |
| b. Parking Fees, Tolls, Taxi Fares | | | _____ | |
| Total Miscellaneous Allowances.................. | | | | _____ |
| **5.** Total Amount Claimed (Items 1-4, Part II)........... | | | | _____ |
| **6.** Less Outstanding Check or Cash Advances.................... | | | | _____ |
| **7.** Net Amount Claimed by Witness........................ | | | | _____ |

**8.** Use this space to itemize your expenses from Item 4, Part II above. Receipts are required for all common carrier, and for all other single items in excess of $75.00.

**9.**                    **Witness Certification**

I certify that the above data is correct and that payment has not been received, and that at the time of travel and attendance I ☐ (was) ☐ (was not) a U.S. Government employee and I ☐ (was) ☐ (was not) a citizen of the United States. (If not a citizen, present your Alien Registration Record with this form.) Common carrier cost ☐ (was) ☐ (was not) paid by NLRB.

_____                    _____
(Signature)                                        (Date)

**(You must complete Part III on reverse side)**

## PART III - RECEIVING PAYMENT

Under the Debt Collection Improvement Act of 1996 (reference Public Law 104-134, Section 31001 (X), the NLRB is required to pay a witness by Electronic Funds Transfer (EFT), which is a direct deposit to your bank, credit union, savings and loan, or other financial institution. The only exception is if you do not have an account with a financial institution. Failure to provide this information may delay or prevent receipt of your claim.

Please provide either a voided check, a deposit ticket (if the routing number is the same as on your check, or fill in the following information:

SSN: _____

ACCOUNT HOLDER: _____

BANK NAME: _____

9 DIGIT ROUTING NUMBER: _____

ACCOUNT NUMBER: _____

TYPE OF ACCOUNT:    CHECKING ☐    OR SAVINGS ☐

SIGNATURE: _____

When your claim is processed the direct deposit will be reflected on your bank statement with a reference to NLRB Treas 349.

**OR**

If you do not have an account with a financial institution sign the following statement.

I certify that I don not have an account with a financial institution or an authorized payment agent.

SIGNATURE: _____

Your payment will be mailed to the address shown in Part I.

## WITNESS CLAIM INSTRUCTIONS

In order to be paid for appearing as a witness you should bring both your subpoena and the NLRB Form titled CLAIMS FOR WITNESS ATTENDANCE FEES, TRAVEL, AND MISCELLANEOUS EXPENSES with you at the time you testify. The NLRB attorney will complete PART I - ATTENDANCE CERTIFICATION. You will complete PART II - WITNESS CLAIM FOR FEES AND ALLOWANCES while you are the hearing. You will receive a witness fee of $40 for each day or part of a day that you are in attendance under the subpoena. You may also be entitled to be reimbursed for mileage, parking, and other travel expenses if the expenses are determined to be necessary under Federal Travel Regulations. The NLRB will determine which travel related expenses can be reimbursed.

The NLRB will pay your witness claim by making a direct deposit, often referred to as an Electronic Funds Transfer or EFT, into your bank or other financial institution. You may complete PART III - RECEIVING PAYMENT prior to coming to the hearing or you may complete it at the hearing. To complete the payment information you can obtain the routing number and the account number from the bottom left of one of your checks as shown in the example below:



The 9 digit routing number on this check is 055003201.
The account number is 1040637596357.
The last set of digits, 1057, are the check number which we do not need.

Once NLRB processes your claim the amount paid will be shown on your bank statement with a reference of "NLRB Treas 349".

If you do not have an account with any bank or financial institution sign the certification to that fact at the bottom of the form, and you will be paid by check at the address shown in PART I on the front side of the form.

**UNITED STATES OF AMERICA**
**NATIONAL LABOR RELATIONS BOARD, REGION 15**

PHILANDER SMITH COLLEGE                                                RESPONDENT

NLRB Charge No. 15-CA-278071

ANTHONY NEWKIRK; EDWINA MOSBY;
and MICHAEL TURLEY                                                    PETITIONERS

## RESPONDENT'S PETITION TO REVOKE
## SUBPOENA DUCES TECUM NO. B-1-1GJT71D

### Introduction

As Philander Smith College (PSC) has consistently maintained and demonstrated for more than a year now,[1] this is not a labor case—it is a First Amendment case. PSC is a historically black college directly and formally affiliated with The United Methodist Church (The UMC), exempt from the National Labor Relations Board's jurisdiction pursuant to the Religion Clauses of the First Amendment; the Religious Freedom Restoration Act of 1993 (RFRA); *NLRB v. Catholic Bishop of Chicago*, 440 U.S. 490 (1979), *University of Great Falls v. NLRB*, 278 F.3d at 1341-43 (D.C. Cir. 2002); *Duquesne Univ. of the Holy Spirit v. Nat'l Lab. Rels. Bd.*, 947 F.3d 824, 832 (D.C. Cir. 2020); and *Bethany College & Thomas Jorsch & Lisa Guinn*, 369 NLRB No. 98 (June 10, 2020). The law is settled and clear: if a college holds itself out to the public as a religious institution, is a non-profit, and is religiously affiliated, then the National Labor Relations Board (NLRB or the Board) *must* decline to exercise jurisdiction. *Id.* **PSC is that college.** Despite that, the General Counsel for the Board has inexplicably persisted in taking the position that PSC is not religious *enough*. Why? Region 15 of the NLRB (Regional Office) and the General Counsel's Division of Advice (Advice) won't say.

PSC has patiently cooperated with the Regional Office and Advice regarding the threshold issue of jurisdiction, providing thousands of pages of undisputed evidence demonstrating PSC's bona fides as a Methodist college. PSC not only provided evidence establishing that it checks all the boxes identified in *Bethany College*. However, PSC has further provided evidence of the formal contractual relationship between the two institutions as well as sworn testimony from the Methodist Bishop—whose office is on PSC's campus, right next to the President's—attesting to all of these facts.

---

[1] Attached to this Petition to Revoke, and incorporated herein by reference, are **Exhibit 1**, PSC's Position Statement and accompanying exhibits (June 11, 2021); **Exhibit 2**, PSC's First Supplemental Position Statement and accompanying exhibits (November 15, 2021); **Exhibit 3**, PSC's Second Supplemental Position Statement and accompanying exhibits (April 15, 2022); and **Exhibit 4**, PSC's Third Supplemental Position Statement and accompanying exhibit (May 27, 2022).

265807                                    1                        **Exhibit D**

At every turn, the General Counsel, Advice, and the Regional Office have disregarded the evidence and the law, without any substantive explanation despite PSC's repeated requests for the same, demanding that PSC voluntarily submit to their misguided assertion of jurisdiction. These attempts to brush aside a prime *constitutional* right held by PSC based on the Board's inferior *statutory* power need to be stopped here and now.

On July 22, 2022, PSC received the Subpoena Duces Tecum No. B-1-1GJT71D (the Subpoena) issued upon the request of "Field Examiner Jordan A. Raby, on behalf of the General Counsel," and electronically signed by NLRB Chairman Lauren McFerran. **Exhibit 5**, *Subpoena*. The Subpoena would require PSC to submit to an exhaustive investigation into the merits of a Charge over which the NLRB clearly has no jurisdiction under federal law. Of course, to be enforceable, an administrative subpoena must, among other things, be issued pursuant to lawful authority, for a lawful purpose, and must request information relevant to the lawful purpose. *United States v. Whispering Oaks Residential Care Facility, LLC*, 673 F.3d 813, 817 (8th Cir. 2012). Without jurisdiction, there is no lawful purpose.

Pursuant to 29 U.S.C. § 161(1) and Section 29 C.F.R. §§ 102.31(b) and 102.66(f), PSC hereby petitions to revoke the Subpoena for a plain lack of jurisdiction.[2]

## Discussion

1.  **The Subpoena must be revoked because PSC is a religious academic institution exempt from the NLRA.**

    a.  *The Constitution, controlling case law, and controlling Board precedent make clear the Subpoena exceeds the Board's statutory jurisdiction.*

The Religion Clauses of the First Amendment prohibit the Government from making any law respecting an establishment of religion and prohibiting the free exercise of religion. U.S. CONST. amend. I. The Religion Clauses establish a "scrupulous policy ... against a political interference with religious affairs." *See Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC*, 565 U.S. 171, 184 (2012) (quoting Letter from James Madison to Bishop Carroll (Nov. 20, 1806)).

In the seminal decision of *NLRB v. Catholic Bishop of Chicago*, 440 U.S. 490 (1979), the Court held that the NLRA does not authorize the Board to exercise jurisdiction over teachers in a church-operated school, no matter whether the school is "completely religious" or merely "religiously associated." *Id.* at 500, 507. The Court explained that teachers play a "critical and unique role . . . in fulfilling the mission of a church-operated school" regardless of whether the teacher provides instruction in religious or secular subjects. *Id.* at 501. Furthermore, the Court reasoned that the Board exercising

---

[2] PSC neither consents to the Board's jurisdiction over it or this matter, nor waives any arguments that it may have relating to lack of jurisdiction by filing this Petition.

jurisdiction over disputes involving the faculty at any church-operated school would present a "significant risk that the First Amendment will be infringed" given, among other issues, the inevitable entangling of the Board in the "terms and conditions of employment" of teachers, which would involve the Board's oversight of "nearly everything that goes on" in a religious academic institution. *Id.* at 502-503 (citation omitted).

After *Catholic Bishop*, the Board developed a case-by-case approach to jurisdiction over religious schools in which it would assert its authority over schools that it determined did not exhibit a "substantial religious character." *Univ. of Great Falls*, 331 N.L.R.B. 1663 (2000). However, in 2002, the United States Court of Appeals for the D.C. Circuit flatly rejected the Board's "substantial religious character" test, concluding that it involved the same "intrusive inquiry" and the "exact kind of questioning into religious matters which *Catholic Bishop* specifically sought to avoid," with "the NLRB trolling through the beliefs of the University, making determinations about its religious mission, and that mission's centrality to the 'primary purpose' of the University." *University of Great Falls v. NLRB*, 278 F.3d at 1341-1343 (D.C. Cir. 2002). The D.C. Circuit then enunciated the *Great Falls* test:

> [I]n determining whether an institution is exempt from the NLRA under *Catholic Bishop*, the Board should consider whether the institution: (a) holds itself out to the public as a religious institution; (b) is non-profit; and (c) is religiously affiliated . . . If so, then the Board must decline to exercise jurisdiction.

In January 2020, the D.C. Circuit handed down *Duquesne Univ. of the Holy Spirit v. NLRB*, 947 F.3d 824, 832 (D.C. Cir. 2020), yet another decision reminding the Board on the limits of its jurisdiction:

> This case begins and ends with our decisions in *Great Falls* and *Carroll College*. In *Great Falls*, we established a "bright-line" test for determining whether the NLRA authorizes the Board to exercise jurisdiction in cases involving religious schools and their teachers or faculty. . . . Seven years after *Great Falls*, we reiterated in *Carroll College* that this test governs the Board's jurisdiction, . . . and we do so again today. This case involves faculty members and Duquesne satisfies the *Great Falls* test. The NLRA therefore does not empower the Board to exercise jurisdiction.

Five months later, in June of 2020, the Board issued *Bethany College & Thomas Jorsch & Lisa Guinn*, 369 NLRB No. 98 (June 10, 2020), which simply admitted what the D.C. Circuit precedent makes clear: **The Board's statutorily created jurisdiction over labor disputes ends where, as here, it conflicts with the Religion Clauses of the First Amendment.**

PSC has repeatedly asked the Regional Office and Advice to recognize and respect the constitutional limits of its jurisdiction and abide by the *Bethany College/Great Falls* test, which is still the law and indeed the standard that Advice purports to be applying in

this case. PSC has patiently cooperated with the Regional Office and Advice. But the Regional Office and Advice have ignored these efforts, looked past the Board's utter lack of jurisdiction, and issued a Subpoena to proceed to the merits of the Charge. The Board should recognize that its statutory authority ends where the Religion Clauses of the Constitution begin.

**b.** ***Advice and the Regional Office have consistently disregarded the Board's lack of jurisdiction over PSC.***

On June 4, 2021, PSC received a Notice from the NLRB that an unfair labor practice charge had been filed against it. Within a week of PSC receiving the Notice, undersigned counsel submitted an expedited position statement, as requested by the Board's Regional Office, explaining why the NLRB lacked jurisdiction under the controlling standard set forth in *Bethany College*. *Ex. 2*. That first position statement provided sufficient evidence demonstrating that PSC met all three prongs of the pertinent analysis: (1) PSC holds itself out to the public as a religious institution,[3] (2) PSC is a nonprofit,[4] and (3) PSC is religiously affiliated.[5] *Id.*

On August 12, 2021, the General Counsel published Memorandum GC 21-04, which required all matters involving the applicability of *Bethany College* to be submitted to Advice.

On October 19, 2021, Advice contacted PSC's counsel to set a conference call to discuss the jurisdictional issue. On November 3, 2021, PSC's counsel attended a call with several attorneys from Advice. Surprisingly, the attorneys requested (1) additional information demonstrating a *more formal* affiliation between PSC and The UMC, and (2) additional examples of PSC publicly displaying its religious affiliation, such as handbooks, social media posts, course catalogs, and others. And while the attorneys acknowledged that *Bethany College* is the controlling standard, they also asked whether PSC could meet

---

[3] To demonstrate PSC holds itself out to the public as a religious institution, PSC provided content from its publicly accessible website, which includes a summary of The UMC's historical connection with PSC and explicitly identifies PSC as a "United Methodist Church affiliated institution." *Ex. 2*.

[4] PSC is a 501(c)(3) nonprofit organization. *Ex. 2*.

[5] In addition to PSC's public declaration of its storied affiliation with The UMC on the website, PSC's Bylaws mandate that PSC's Board of Trustees must always consist of the following Methodist community leaders: the Bishop of The UMC of the Arkansas area; a superintendent from the Arkansas Conference of The United Methodist Church, designated by the Bishop; and at least one staff member of the Division of Higher Education of the General Board of Higher Education and Ministry of The United Methodist Church. The Bylaws also state that, upon dissolution of PSC, the assets are to "revert to the General Board of Higher Education and Ministry of The United Methodist Church." And this says nothing of the fact that the Arkansas Conference of The UMC is headquartered on PSC's property adjacent to PSC's President's office. *Ex. 2*.

the standard enunciated in *Pacific Lutheran University*, 361 NLRB 1404 (2014), the Board standard adopted in 2014 and overruled by *Bethany College*, and if so, provide documentation and argument regarding the same.

On November 15, 2021, PSC submitted a Supplemental Position Statement providing the requested supplemental briefing and documentation. *Ex. 3*. Indeed, PSC provided almost 1800 pages of additional documentation further demonstrating PSC's historic and unwavering affiliation with The UMC and the public display of that affiliation.[6] PSC also demonstrated that it was exempt from Board jurisdiction under *Pacific Lutheran*.[7] *Id.*

On January 10, 2022, the Regional Office sent an email to PSC's counsel explaining, "I have been directed to restart the investigation into the merits of the above-referenced charge. Please note, *I have been advised that no decision has been reached by the Division of Advice regarding the jurisdiction issue yet.*" Emphasis added. PSC immediately objected to expending time and resources on an investigation by a government agency that had yet to even take a position on the threshold issue of jurisdiction—particularly where, as here, the lack of jurisdiction is based on PSC's deeply held religious beliefs and affiliation.

On January 18, 2022, PSC's counsel attended a call with Advice Senior Attorney Dexter Sutton, Sr. and Jeannette Ghatan. PSC's counsel requested an update on the jurisdictional determination and a stay of the NLRB's investigation while the issue remained pending. Mr. Sutton and Mrs. Ghatan could provide no estimate as to when Advice expected to take a position on the jurisdictional issue and claimed that Advice did not have the authority or ability to issue a stay of the merits investigation. Accordingly, PSC immediately requested a stay from the Board's Regional Office. On January 19, 2022, the Regional Office approved PSC's request and stayed the investigation while the jurisdictional issue remained pending with Advice.

---

[6] PSC provided 46 supplemental exhibits, including: Institutional Reports which are required by The UMC to maintain PSC's affiliation with and funding from The UMC's University Senate; the Course Catalogue; the Faculty Handbook and Employment Contract; the Student Handbook; countless posts from Twitter, Facebook, and Youtube made by PSC, its students, and its faculty affirming its religious affiliation; and The UMC's own statements that PSC is indeed a Methodist institution. *Ex. 3*.

[7] The *Pacific Lutheran* analysis is similar to *Bethany College* but adds a layer of analysis by requiring the religious academic institution prove that it "holds out the petitioned-for faculty members themselves as performing a specific role in creating or maintaining the religious educational environment, as demonstrated by its representations to current or potential students and faculty members, and the community at large." In addition to PSC's public display of its formal affiliation with The UMC, PSC's Student and Faculty Handbooks explicitly require, among other things, that faculty and first-year students participate in weekly chapel and abide by its Methodist-focused mission statement. *Ex. 3*.

On March 17, 2022, PSC received a cursory email from the Regional Office relaying Advice's decision that the Board had jurisdiction over PSC pursuant to *Bethany College*:

> Please be advised, the Agency's Division of Advice determined that the Board has jurisdiction over the Employer in this matter pursuant to the standard set out in *Bethany College*. Accordingly, attached is a request for information related to the merits of the above-referenced charge.

No rationale was provided to explain the decision to disregard thousands of pages of uncontroverted evidence, hours of religious sermons broadcasted from the center of PSC's campus and delivered by members of its faculty, and ultimately, the protections afforded to the College under the Constitution of the United States.

On March 21, 2022, given the complete lack of an explanation as to why or how Advice arrived at its conclusion, PSC's counsel requested a conference with Advice to understand how, in the face of the evidence presented, it concluded the Board had jurisdiction over PSC under *Bethany College*. Advice's Associate General Counsel Richard Bock immediately denied the request, declaring:

> The Region is fully equipped to communicate the decision to you. That is a Regional function in all cases – including this one where it is a decision as to the threshold jurisdictional matter rather than as to the merits of the ULP, which I understand is still under investigation. Accordingly, any questions you have about the determination to assert jurisdiction should be directed to the Region.

On March 28, 2022, PSC's counsel attended a conference call with Regional Officer Stacia Campbell and Field Attorney Jordan Raby. During the call, PSC's counsel asked whether Advice or the Regional Office could provide a written explanation of its jurisdictional determination. Although Ms. Campbell acknowledged that Advice had produced a written decision, she declined PSC's request to review that decision. Ms. Campbell relayed that Advice's decision was based on its conclusion that PSC's affiliation with The UMC was allegedly not direct and formal *enough* to meet the exemption under *Bethany College*'s controlling standard. In other words, Advice took the dubious position that despite PSC's Bylaws, Board composition, public and private-facing religious pronouncements, and the rest of the thousands of pages of records previously supplied, some type of contract between The UMC and PSC is necessary to exempt PSC from the NLRB's reach.[8]

---

[8] Of course, this is only a guess. PSC cannot know Advice's actual position and reasoning, given its apprehension at committing the substance of and rationale supporting its decision in writing to PSC. To be sure, nothing in *Bethany College* or *Great Falls* or any other controlling precedent requires a contractual arrangement between a church and the church's religiously-affiliated institution of higher education.

On April 15, 2022, PSC provided supplemental evidence further demonstrating the explicit, formal, and direct relationship between PSC and The UMC that the Board found lacking. *Ex. 4*. More specifically, PSC offered proof of the direct financial relationship between The UMC and PSC, providing receipts of over $3,100,000 that The UMC has paid to PSC over the past 5 years. *Id.* PSC also provided numerous letters from The UMC to PSC, explicitly acknowledging the formal affiliation and clear contractual relationship PSC enjoys with The UMC. *Id.* PSC also again requested that the Board, assuming it remained convinced of its jurisdiction over PSC, provide a written explanation as to what evidence and facts it is relying upon to support such a conclusion. *Id.*

On April 27, 2022, Field Examiner Raby notified undersigned counsel that Advice received the additional evidence but would not change its decision, stating:

> This email is to inform you that the Agency's Division of Advice has considered the additional position statement and evidence you submitted in this case on April 15, 2022, but has determined that it will not change its initial determination at this time that the Board has jurisdiction over this Employer in this matter pursuant to the standard set forth in *Bethany College*. Accordingly, I am writing to request that you present your position statement and evidence as requested in Field Attorney Alex Schule's request for evidence letter[9] (copy attached) no later than May 11, 2022.[10] If you have any questions or concerns, please do not hesitate to let us know.

Again, no written explanation was provided, and the cryptic statement that Advice "will not change its *initial* determination *at this time* that the Board has jurisdiction . . . pursuant to . . . *Bethany College*," suggests some uncertainty. With the benefit of almost a year's worth of hindsight, it is clear that Advice is refusing to provide any written explanation because the evidence presented overwhelmingly establishes that PSC falls within the constitutional protections recognized in *Bethany College*.

On May 27, 2022, PSC submitted another Supplemental Position Statement with the Declaration of Bishop Gary E. Mueller, the Resident Bishop for the Arkansas Conference of The UMC. *Ex. 5*. In that Declaration, Bishop Mueller swore under the penalty of perjury that: PSC is a member of The UMC's formal network of colleges and universities; PSC has been directly affiliated with, and significantly operated and controlled by, The UMC since 1877; the Arkansas Conference of The UMC is

---

[9] The comprehensive request for evidence seeks a massive amount of information going back three years, much of which does not relate to the Charging Parties' terminations in December 2020. Without waiving its objections to proceeding any further in this investigation, PSC affirmatively states that it terminated the Charging Parties as part of a larger reduction-in-force necessitated by the COVID-19 pandemic, not in retaliation against employees for engaging in any alleged protected activity.

[10] The Regional Office granted PSC an extension to provide its response.

265807                                    7

headquartered on PSC's campus; and PSC receives millions of dollars in funding from The UMC in consideration for its compliance with religious requirements specific to the Methodist faith. *Id.* PSC expected The UMC Bishop's sworn statement to remove any doubt based in good faith as to this HBCU's bona fides as a Methodist academic institution exempt from the NLRA. It did not.

On June 29, 2022, Field Examiner Raby notified undersigned counsel that Advice received and considered the additional evidence but again refused to change its decision, stating:

> This email is to inform you that the Agency's Division of Advice has considered the information and evidence [Bishop Mueller's Declaration] you submitted in this case on May 27, 2022, but does not believe this information and evidence is sufficient to change the determination that the Board has jurisdiction over this Employer in this matter pursuant to the standard set forth in *Bethany College*. Accordingly, I am requesting that you present your position statement and evidence on the merits of this charge[.]

Despite the General Counsel's assurances to the American public that "I try to be very transparent" and "enforce statutory rights in a neutral manner," PSC has been afforded no transparency to date.[11] To date, the General Counsel, Advice, and the Regional Office have refused to engage in any meaningful discourse regarding the evidence and the constitutional violation they stand pat on making. Instead, Advice and the Regional Office have consistently represented to PSC, without explanation and in the face of

---

[11] The General Counsel has acknowledged in many public speeches that the Board is the rulemaking and adjudicating arm of the NLRB. In her Senate confirmation hearing, then-nominee Abruzzo stated that if selected as General Counsel she would "enable[e] all board agents to effectively enforce statutory rights in a neutral manner by giving full opportunity for employers and unions to have their positions heard." STATEMENT OF JENNIFER ANN ABRUZZO NOMINEE FOR GENERAL COUNSEL OF THE NATIONAL LABOR RELATIONS BOARD BEFORE THE COMMITTEE ON HEALTH, EDUCATION, LABOR AND PENSIONS OF THE UNITED STATES SENATE, April 29, 2021 (https://www.help.senate.gov/imo/media/doc/Abruzzo.pdf) (last accessed July 13, 2022). In a later podcast with JDSupra, the then-confirmed General Counsel stated: "I try to be extremely transparent for everyone. My goals are to educate, to protect, and to enforce, and part of the memos is to educate workers but also employers and unions about workers' rights under the statute and employers' and unions' responsibilities under the statute. But those are guidance memos, and I am looking in many of those cases to have the board re-consider current board law, uh and hopefully the board will take those up, those issues that I've raised. But until the board agrees with me, ***it is not considered board law***." MICHAEL SCHMIDT, *Employment Law Now Podcast, Employment Law Now VI-115- A Conversation with NLRB General Counsel Jennifer Abruzzo* (2022), https://www.jdsupra.com/legalnews/emploment-law-now-vi-115-a-conversation-82290/ (last visited July 13, 2022). (emphasis added).

incontrovertible evidence to the contrary, that *Bethany College* permits the Board's exercise of jurisdiction over PSC. This sort of shortsightedness smacks of a cavalier political agenda aimed at elevating the NLRB above the constitution.

Not surprisingly, PSC has ceased its voluntary cooperation with any further investigation.

On July 22, 2022, PSC received the Subpoena requesting "documents [to] assist the Region in its investigation and in determining the merits of the . . . charges." For the reasons previously stated, PSC asks the Board to revoke the Subpoena given the lack of jurisdiction based on PSC's deeply held religious beliefs and affiliation, the Religion Clauses of the First Amendment, the RFRA, and controlling Board precedent.

Hopefully, the Board will finally give full and fair consideration to the arguments and evidence PSC has repeatedly put before the Regional Office and Advice, recognize the constitutional limits of the Board's authority, and grant the Petition to Revoke the Subpoena. If not, PSC stands prepared to defend its rights in federal court.

## 2.  General Objection to the Scope of the Subpoena

The Charging Parties filed the unfair labor practice charge in this matter on June 4, 2021. Under Section 10(b) of the NLRA, no acts or omissions by PSC occurring more than six months before the filing of the charge may be used to support the charge. Accordingly, information from before January 1, 2021 is outside the relevant period for investigating this matter. To the extent the Subpoena expressly seeks information or documents outside of the relevant period for this matter or does not narrow the temporal scope of its requests to the relevant period, the Subpoena is overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

## Conclusion

The NLRB is neither authorized nor equipped to delve into any further investigation. PSC has patiently cooperated with the Regional Office and Advice regarding the threshold issue of jurisdiction for well over a year, providing thousands of pages of undisputed evidence demonstrating PSC's bona fides as a Methodist college, its formal contractual relationship with The UMC, and sworn testimony from a Methodist Bishop attesting to the same. The record demonstrates that the Subpoena was not issued pursuant to lawful authority or for a lawful purpose. Accordingly, PSC respectfully requests that the Subpoena be revoked before more resources are expended by the parties or the Government.

DATED this 29th day of July, 2022.

Respectfully submitted,

J. Bruce Cross (ABN 1974028)
Brett W. Taylor (ABN 2014175)
CROSS, GUNTER, WITHERSPOON
    & GALCHUS, P.C.
500 President Clinton Ave., Suite 200
Little Rock, AR 72201
Telephone: (501) 371-9999
Facsimile: (501) 371-0035
btaylor@cgwg.com
bcross@cgwg.com
*Attorneys for PSC*

cc:    NLRB Field Examiner Jordan Raby

265807                          10

UNITED STATES OF AMERICA
BEFORE THE NATIONAL LABOR RELATIONS BOARD
REGION 15

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*
                                             \*

**PHILANDER SMITH COLLEGE**         \*      **Case  15-CA-278071**
                                             \*

**and**                                            \*
                                           \*

**ANTHONY BOLTON NEWKIRK**    \*

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## OPPOSITION TO PETITION TO REVOKE SUBPOENA DUCES TECUM

Counsel for the General Counsel (General Counsel) of the National Labor Relations Board (Board) files this Opposition to the Petition to Revoke Subpoena Duces Tecum filed by Philander Smith College (the Employer). On July 18, 2022, the Region 15 of the Board issued subpoena duces tecum No. B-1-1GJT71D[1] (Subpoena) to the Employer requiring the production of various relevant documents. In response, on July 27, 2022, the Employer filed its Petition to Revoke the Subpoena (Petition).[2] Because the Employer fails to state any valid basis for revoking the Subpoena, the General Counsel requests that the Petition be denied in its entirety.

### I.    The Charge[3]

On June 4, 2021, Anthony Bolton Newkirk (Charging Party) filed the charge in the instant case alleging the Employer violated Section 8(a)(1) of the Act by discharging employees Anthony Bolton Newkirk, Edwina Mosby, and Michael Turley in retaliation for and/or in order to discourage protected concerted activities.

---

[1] Subpoena *Duces Tecum* B-1-1GJT71D is attached hereto as Exhibit A.
[2] Respondent's Petition to Revoke Subpoena is attached hereto as Exhibit B.
[3] The charge is attached hereto as Exhibit C.

**Exhibit E**

## II.     The Region's Investigation and the Subpoena

Consistent with its customary investigative practices, the Region conducted a preliminary investigation into jurisdictional matters. the Employer argued the Board lacked jurisdiction over it and participated in the investigation by producing evidence and information in support of its argument. Pursuant to the investigation of the jurisdictional dispute, the Board's Division of Advice concluded that the Employer was subject to the Board's jurisdiction as set forth in *Bethany College* 369 NLRB No. 90 (2020). Thereafter, the Region repeatedly solicited production of a host of basic and relevant documents, thus seeking the Employer's cooperation with the investigation of the merits of this case. Instead of fully cooperating with the Region's investigation, the Employer opted to continue to insist that it is not subject to the Board's jurisdiction and has refused to produce critical documents sought in the investigation.[4] Because the documents the Employer refused to produce are necessary to decide the merits of this case, the Region was forced to issue the Subpoena.

In its Petition, the Employer continues to belabor the issue of jurisdiction and only briefly touches on the issue of the Subpoena's scope on the final page of its Petition. The Employer's argument that the Board lacks jurisdiction and its assertions regarding the scope of the Subpoena are without merit. Accordingly, the Employer should be ordered to comply with the Subpoena.

## III.     Applicable Legal Standards

The test for determining the appropriateness of an administrative subpoena is: 1) whether the inquiry is within the authority of the issuing agency; 2) whether the request is too indefinite; and 3) whether the information sought is reasonably relevant. *United States v. Morton Salt Company,* 338 U.S. 632 (1950). The standard for determining relevance under the rules and case

---

[4] Each of the Region's Requests for Evidence emails and letters are attached hereto as Exhibit D.

law governing proceedings before the Board is very broad. Under the Board's Rules and Regulations, a subpoena shall be revoked on relevance grounds if it "does not relate to any matter under investigation or in question in the proceeding." Board's Rules and Regulations, §102.31(b). *See also Morton Salt Co.; NLRB v. Williams,* 396 F.2d 247, 429 (7th Cir. 1968).

The applicable test for determining the merit of a petition to revoke a government subpoena is whether the evidence desired by the subpoena is "plainly incompetent or irrelevant to any lawful purpose." *Endicott Johnson Corporation,* 317 U.S. 50 1, 509 (1943). The subpoenaed information "must touch upon the matter under investigation or in question," and if it does, a petition to revoke should be denied. *Williams,* 396 F.2d at 249 (citing *N.L.R.B. v. Rohlen,* 385 F.2d 52, 55-56 (7th Cir. 1967)). Moreover, "[t]he party challenging an administrative agency's subpoena bears the burden of demonstrating that the subpoenas are unreasonable and unduly burdensome." *Brooklyn Manor, Corp. v. NLRB,* 1999 WL 1011935 *3 (E.D.N.Y. Sept. 22, 1999) (citing *FTC v. Texaco,* 555 F.2d 862, 882 (D.C. Cir. 1977)). Where "the agency inquiry is pursuant to a lawful purpose and the requested documents are relevant to that purpose" that burden is not easily met. *Id.* Further, it is undisputed that the Board may issue subpoenas requiring the production of evidence and testimony during the investigatory stages of an unfair labor practice proceeding, as well as after a complaint has issued. See, e.g., *NLRB v. North Bay Plumbing. Inc.,* 102 F.3d 1005, 1008 (9th Cir. 1996); *NLRB v. Carolina Food Processors,* 81 F.3d 507, 510 (4th Cir. 1996.). The Subpoena, which calls for production of relevant documents necessary to investigate the merits of the case, easily meets this standard.

IV.     **The Employer's Petition to Revoke Should be Denied**

      a.  **The Employer is subject to the Board's jurisdiction under *Bethany College***

In *Catholic Bishop*, the Supreme Court found that Board jurisdiction over labor disputes between church-operated schools and their teaching employees would present "a significant risk that the First Amendment will be infringed."[5] The Court declined to construe the Act in a manner that would require resolution of such difficult First Amendment issues and therefore held that the Act did not grant the Board jurisdiction over lay teachers in church-operated schools.[6] In so doing, the Court recognized that the assertion of jurisdiction over cases where a school defends its actions on the grounds that they were mandated by its religious views would "necessarily involve inquiry into the good faith of the position asserted by the clergy-administrators and its relationship to the school's religious mission."[7] The Court further observed that it was not merely the Board's conclusions that may impinge on the guarantees of the Religion Clauses, but also the "very process of inquiry leading to findings and conclusions."[8]

In *Bethany College*,[9] the Board adopted the D.C. Circuit's three-part test set forth in *University of Great Falls v. NLRB*[10] for assessing whether the Board can exercise jurisdiction over faculty at religious schools. Under the *Great Falls* test, which itself drew upon a First Circuit opinion in *Universidad Central de Bayamon v. NLRB*,[11] a school is a *bona fide* religious institution if it: (1) "holds itself out to students, faculty, and community as providing a religious educational environment"; (2) is "organized as a nonprofit"; and (3) is "affiliated with, or owned, operated, or controlled, directly or indirectly, by a recognized religious organization, or

---

[5] 440 U.S. 490, 502-04 (1979).
[6] *Id.* at 506-07.
[7] *Id.* at 502.
[8] *Id.*
[9] 369 NLRB No. 98, slip op. at 1.
[10] 278 F.3d 1335, 1344 (D.C. Cir. 2002).
[11] 793 F.2d 383, 399-400 (1st Cir. 1985) (evenly divided en banc) (Breyer, J., controlling opinion denying enforcement).

with an entity, membership of which is determined, at least in part, with reference to religion."[12] Notably, the controlling opinion in *Bayamon* did not actually use the term "affiliated." Rather, the D.C. Circuit apparently mined that term from *Catholic Bishop*, observing that the third prong, "at least in its simplest form, is directly analogous to *Catholic Bishop*" in that the "school, college, or university must be 'religiously affiliated.'"[13] Although the Board, in its *Bethany* decision, acknowledged that the D.C. Circuit expressed some reservations about the breadth of the third prong, it found it unnecessary to address that concern because Bethany College's religious "affiliation" had been clearly established through its religious ownership and operation, as was also the case in *Great Falls*.[14]

Although the Employer may meet the first two prongs of the test set forth in *Bethany College*, it cannot meet the third prong, and therefore the Board should deny the Employer's Petition and order the Employer to comply with the Subpoena.

The Employer is not owned, operated, or controlled by the Church. While the Employer's assets would revert to the General Board of Higher Education and Ministry of the Church upon dissolution, this fact fails to establish present ownership interest by an arm of the Church. Similarly, although the Employer's forerunner, Walden Seminary, was sponsored or owned by the Church, this fact fails once again to establish present ownership.

---

[12] *Bethany College*, 369 NLRB No. 98, slip op. at 3, 6 (quoting *Great Falls*, 278 F.3d at 1343-44, 1347 & n.2). Although *Great Falls*, in fact, articulated the third prong as requiring that the institution be "religiously affiliated" and explicitly declined to adopt the other indicia listed above, 278 F.3d at 1343, 1347 & n.2, the D.C. Circuit later stated that prong as it appears above. *See Carroll College, Inc. v. NLRB*, 558 F.3d 568, 572 (D.C. Cir. 2009). More recently, however, the D.C. Circuit returned to its "religiously affiliated" iteration of the test. *See Duquesne University of the Holy Spirit v. NLRB*, 947 F.3d 824, 831 (D.C. Cir. 2020).

[13] *Great Falls*, 278 F.3d at 1344-45 (quoting *Catholic Bishop*, 440 U.S. at 495).

[14] *Bethany College*, 369 NLRB No. 98., slip op. at 6 n.10. *See Great Falls*, 278 F.3d at 1343-45, 1347 n.2 (finding university to be "affiliated with . . . a recognized religious organization"—and therefore not deciding "whether other indicia of religious character might replace 'affiliation' in other cases"—where it is "sponsored by, its campus is owned by, and control is ultimately reserved to, a recognized religious organization").

Indeed, the Employer has failed to establish it is "affiliated" with the Church. Although not well-defined in the case law, in *Bethany College* and *Great Falls*, the Board and the D.C. Circuit, respectively, used "affiliated" virtually synonymously with religious ownership, control, or operation.[15] Moreover, the D.C. Circuit plucked that term from the procedural history in *Catholic Bishop*, a case that involved schools actually "operated by a church."[16] Thus, "affiliated" seems to connote a school-church relationship that is stronger than its ordinary meaning might imply.[17]

The only salient precedent distinguishing "affiliated" from the other prong-three indicia is the D.C. Circuit's opinion in *Carroll College*.[18] There the court found that the college was affiliated with a recognized religious organization based on the fact that its articles of incorporation provided that it was "related" to a synod of the United Presbyterian Church and, pursuant to an agreement with the synod, it was bound to "recognize and affirm its origin and Heritage in the concern of the [c]hurch."[19] It also cited the college's course catalogue, which stated that the college was "affiliated" with the Church, but did not discuss the relative

---

[15] *Bethany College*, 369 NLRB No. 98., slip op. at 6 n.10 ("religious affiliation . . . has been clearly established" given that college is "owned and operated by the Central States Synod and the Arkansas/Oklahoma Synod of the [Evangelical Lutheran Church in America]"); *Great Falls*, 278 F.3d at 1345 (finding affiliation where university was "sponsored by, its campus is owned by, and control is ultimately reserved to" the Catholic Order of the Sisters of Providence).

[16] *Great Falls*, 278 F.3d at 1344-45 (quoting *Catholic Bishop*, 440 U.S. at 495 ("The [Seventh Circuit] considered the Board's actions in relation to its discretion in choosing to extend its jurisdiction only to religiously affiliated schools that were not 'completely religious.' It concluded that the Board had not properly exercised its discretion, because the Board's distinction between 'completely religious' and 'merely religiously associated' failed to provide a workable guide . . . .")); *Catholic Bishop*, 440 U.S. at 491 (couching the question presented as "[w]hether teachers in schools operated by a church to teach both religious and secular subjects are within the jurisdiction granted by the [Act]").

[17] *See* Oxford English Dictionary (3d ed. 2012) (online version updated Dec. 2021) (defining affiliated as "[t]hat is connected with a larger or more established body, often as a branch or subsidiary part; that is associated with a main or major group; that is an affiliate or member").

[18] 558 F.3d 568. *See also Duquesne University*, 947 F.3d at 833 (undisputed that third prong was met where university was "affiliated with the Catholic Church and the Spiritan religious order," without citing any facts in support of this finding), *denying enforcement to* 366 NLRB No. 27 (2018) (where the term "affiliated" does not appear).

[19] 558 F.3d at 573-74.

significance of that fact.[20] The court faulted the Regional Director for finding the third prong not met because the Church did not sponsor or own the college and did not have the right to control it, observing that "our test is met with affiliation alone."[21]

Moreover, the Employer is not affiliated with the Church within the meaning of *Bethany College*. The Employer has failed to demonstrate it has any binding or formal commitment to the Church or an arm of the Church. Unlike in *Carroll College*, where the college had entered into a written agreement with the synod to "recognize and affirm its origin and Heritage in the concern of the [c]hurch," here the Employer has failed to produce a comparable document, despite a request to do so. The statement in the Employer's institutional report that it "acknowledges a definite obligation and commitment to the ideas of [the Church]" clearly lacks the same force as the synod agreement in *Carroll College*. Similarly, the Employer's approval by the Church's University Senate and its inclusion on the list of Church-affiliated institution are inadequate substitutes for the type of formal agreement in *Carroll College*, especially since the University Senate of the Church sets the requisite benchmarks for affiliation, which may or may not align with the Board's definition of affiliation, and the institutional features it uses to decide affiliation appear to be less stringent than the Board likely envisioned in *Bethany College*.[22]

### b.  The Subpoena is not Overbroad or Burdensome

The Employer argues it should not be required to comply with the Subpoena because it is overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. In support of this argument, the Employer simply notes the Subpoena seeks

---

[20] *Id.* at 573.
[21] *Id.* at 574.
[22] *See* the University Senate's seven features of Church-relatedness, *supra* p.11-12.

information from the Employer for a period exceeding the six months preceding the filing of the charge. The Employer's arguments are unpersuasive and should be rejected.

It is well established that the burden of demonstrating undue burden rests on the party asked to produce the information. See *FTC v. Texaco*, 555 F.2d 862, 882 (D.C. Cir 1977), cert. denied sub nom. *Standard Oil of California v. FTC*, 431 U.S. 974 (1977). The Employer's unsupported objection fails to satisfy this burden. *NLRB v. Carolina Food Processors*, 81 F.3d 507, 513 (4th Cir. 1996). The Employer does not elaborate on how specifically the Subpoena is unduly burdensome, and has not established any basis for finding the production of documents would be burdensome at all. The narrowly constructed Subpoena only requests relevant documents and the search for such documents is not costly or time consuming in the modern age. Furthermore, to the extent that the Employer wishes to narrow the production request, the Region remains willing to discuss any specific request and remains open to resolving these issues.

The Employer further argues the Subpoena is not reasonably calculated to lead to the discovery of admissible evidence. However, the requested documents bear directly on the allegation that the Employer discriminatorily discharged employees Anthony Bolton Newkirk, Edwina Mosby, and Michael Turley. The requested documents are relevant because they will enable the Region to examine circumstances surrounding the discharge of the discriminatees and to ascertain the Employer's *Wright Line* defense.[23] In other words, because the documents requested in the Subpoena will shed light on a matter that is clearly covered by the charge, the

---

[23] Under the test set forth in *Wright Line*, in order to prove a violation of the Act, there must be sufficient evidence to show that the discriminatee engaged in protected activity that the employer was aware of, and that this activity was a "motivating factor" (showing animus) for the action taken against the discriminatee. See *Wright Line*, 251 NLRB 1083 (1980), *enforced*. 662 F.2d. 899 (1st Cir. 1981), *cert. denied*. 455 U.S. 989 (1982). To support an inference of unlawful motivation, the Board may look to, among other factors, disparate treatment of the affected employee and the timing of the discipline relative to the employee's protected activity. *Embassy Vacation Resorts*, 340 NLRB 846, 848 (2003); *Mesker Door, Inc.*, 357 NLRB No. 59, slip op. at 2 (2011). However, the Board will not find a violation if the employer can show that the same action would have been taken even in the absence of any supposed union activity. *See Wright Line*, 251 NLRB at 1089.

documents are highly relevant. *United States v. Fla. Azalea Specialists*, 19 F.3d 620, 623 (11th Cir. 1994). *See also NLRB v. Williams*, 396 F.2d. 247, 249 (7th Cir. 1968) (quoting *Endicott Johnson Corp. v. Perkins*, 317 U.S. 501, 509 (1943)) ("subpoenas are to be enforced if the agency is seeking information 'not plainly incompetent or irrelevant to any lawful purpose").

**V.    Conclusion**

The Subpoena at issue is limited in time and scope and calls for production of relevant documents to enable the Region to investigate the allegations in the charge, along with the Employer's defenses. The Employer has failed to provide a sound basis for revoking the Subpoena. For the foregoing reasons, the General Counsel respectfully requests that the Employer's Petition be denied in full, and that the Employer be directed to produce all documents sought by the Subpoena.

Dated: New Orleans, LA
      August 11, 2022

Respectfully Submitted,

/s/ Zachary E. Herlands

Zachary Herlands
Counsel for the General Counsel
National Labor Relations Board
Region 15
600 South Maestri Place, 7th Floor
New Orleans, LA 70130-3413
Telephone (504) 589-6362
Facsimile (504) 589-4069
zachary.herlands@nlrb.gov
New York Bar No. 4892659

## OPPOSITION TO PETITION TO REVOKE SUBPOENA DUCES TECUM

I, the undersigned employee of the National Labor Relations Board, being duly sworn, depose and say that on August 11, 2022, I electronically filed the above-entitled document with the National Labor Relations Board and served the above-entitled document upon counsel for the parties by electronic mail at the following addresses:

J. Bruce Cross
CROSS, GUNTER, WITHERSPOON & GALCHUS P.C.
500 President Clinton Ave Ste 200
Little Rock, AR 72201-1754
Email: bcross@cgwg.com

Brett Taylor, Attorney
Cross, Gunter, Witherspoon & Galchus, P.C.
500 President Clinton Ave Ste 200
Little Rock, AR 72201-1754
Email: btaylor@cgwg.com

Manuel Quinto-Pozos
DEATS, DURST & OWEN, PLLC
707 West 34th Street Suite 3
Austin, TX 78705
Email: mqp@ddollaw.com


Dated: New Orleans, LA
        August 11, 2021

                                        /s/ Zachary E. Herlands

                                        Zachary E. Herlands
                                        Counsel for the Acting General Counsel
                                        National Labor Relations Board
                                        Region 15
                                        600 S. Maestri Place, 7th Floor
                                        New Orleans, LA 70130
                                        Telephone (504) 589-6362
                                        Facsimile (504) 589-4069
                                        zachary.herlands@nlrb.gov
                                        New York Bar No. 4892659

### UNITED STATES OF AMERICA
### NATIONAL LABOR RELATIONS BOARD

PHILANDER SMITH COLLEGE                                    RESPONDENT

NLRB Charge No. 15-CA-278071

ANTHONY NEWKIRK; EDWINA MOSBY;
and MICHAEL TURLEY                                         PETITIONERS

### RESPONSE TO THE GENERAL COUNSEL'S
### OPPOSITION TO RESPONDENT'S PETITION TO REVOKE
### SUBPOENA DUCES TECUM NO. B-1-1GJT71D

### Introduction

On July 29, 2022, Respondent Philander Smith College (PSC) filed its Petition to Revoke Subpoena Duces Tecum No. B-1-1GJT71D (the Subpoena), explaining—as it has to the Regional Office and the General Counsel's Division of Advice for the past fourteen months—that the Board lacks jurisdiction over PSC based on the standard enunciated in *Bethany College*, 369 NLRB No. 90 (2020), which exempts academic institutions from the Board's statutorily authorized jurisdiction if the institution: (1) "holds itself out to students, faculty, and community as providing a religious educational environment"; (2) is "organized as a nonprofit"; and (3) is "affiliated with, or owned, operated, or controlled, directly or indirectly, by a recognized religious organization, or with an entity, membership of which is determined, at least in part, with reference to religion."[1]

On August 11, 2022, the General Counsel filed her Opposition to the Petition, arguing the Subpoena is valid and, in essence, the third prong of *Bethany College* does

---

[1] As previously explained, *Bethany College* adopted the standard set forth in *University of Great Falls v. NLRB*, 278 F.3d 1335 (D.C. Cir. 2002), acknowledging the limits of the Board's jurisdiction over religious academic institutions given the Religion Clauses of the First Amendment. *See also NLRB v. Catholic Bishop of Chicago*, 440 U.S. 490 (1979); *Duquesne Univ. of the Holy Spirit v. Nat'l Lab. Rels. Bd.*, 947 F.3d 824, 832 (D.C. Cir. 2020).

not mean what it says. Later that same day, Region 15's Regional Director entered an Order referring the Petition to Revoke to the Board for Ruling.

Pursuant to Sections 5.1(e) and 5.3(d) of the Guide to Board Procedures and Rule 29 C.F.R. 102.31(b), PSC submits this Response to the General Counsel's Opposition. As explained below, the General Counsel's arguments are without merit and PSC has met its burden in demonstrating the Subpoena must be revoked.

<u>**Discussion**</u>

1.  **The legal standard offered by the General Counsel is of no help to the Board deciding the central issue raised in PSC's Petition to Revoke the Subpoena.**

The legal standard set forth in the General Counsel's Opposition suggests: (1) the Petition to Revoke is based on relevance grounds alone; and (2) the NLRB may subpoena and investigate any entity or person that it chooses, so long as the information sought is relevant to the merits of a charge. *See* Opposition, pp. 2-3. Whether the Subpoena seeks information relevant to the merits of the charge ignores the principal issue: Do the Religion Clauses of the First Amendment limit the NLRB's statutory authority to investigate a religious academic institution? The answer is obviously yes.

To investigate the merits of a charge, the Board must first have jurisdiction. *United States v. Whispering Oaks Residential Care Facility, LLC*, 673 F.3d 813, 817 (8th Cir. 2012) (to be enforceable, an administrative subpoena must be issued pursuant to lawful authority); *Resol. Tr. Corp. v. Thornton*, 41 F.3d 1539, 1544 (D.C. Cir. 1994) (an administrative subpoena is not enforceable if the inquiry is outside the authority of the agency). If the issuing agency lacks jurisdiction over a subpoenaed party, then the inquiry is necessarily outside the issuing agency's authority and the subpoena is invalid. Indeed, the Board's own Rules and Regulations state "the Board . . . will revoke the subpoena if in

their opinion the evidence whose production is required does not relate to any matter under investigation or in question in the proceedings or the subpoena does not describe with sufficient particularity the evidence whose production is required, *or if for any other reason sufficient in law the subpoena is otherwise invalid.*" 29 C.F.R. 102.31(b) (emphasis added). It should go without saying the *constitutional* prohibition against the Board's exercise of its *statutory* jurisdiction over a religious academic institution is one of those "other reasons" sufficient in law to demonstrate the Subpoena is invalid.

Accordingly, the General Counsel's proposed relevance standard is of no value to the Board in determining whether the subpoena was issued pursuant to lawful authority.

**2.      The General Counsel's Opposition distorts the third prong of *Bethany College*.**

The dispositive inquiry before the Board is simply whether PSC is "<u>affiliated with,</u> <u>or</u> owned, operated, or controlled, directly <u>or indirectly,</u> by a recognized religious organization [such as The UMC], <u>or</u> with an entity, membership of which is determined, at least in part, with reference to religion [such as The UMC's University Senate]."[2] *Bethany College* (emphasis added).

The General Counsel does not dispute that PSC meets the first two prongs of the test. Indeed, the General Counsel goes so far as to implicitly acknowledge that PSC is "affiliated with" The UMC if the phrase is given its plain, ordinary, and commonly

---

[2] The University Senate elected by the General Conference of the United Methodist Church determines which schools, colleges, universities, and theological schools meet the criteria for listing as institutions affiliated with The UMC. The Senate is charged with reviewing Methodist-affiliated schools, colleges, universities, and theological schools to maintain institutional integrity and clearly defined Church relationships. *See* https://www.gbhem.org/education-leaders/university-senate/. This demonstrates, at the very least, that PSC is affiliated with and indirectly controlled by an entity (the University Senate) which decides what academic institutions are religiously affiliated member. Therefore, the third prong of *Bethany College* is clearly met.

understood meaning. *See* Opposition, p. 6. Indeed, the General Counsel cites the Oxford definition of "affiliated" for the word's ordinary meaning but claims the word "seems to connote a school-church relationship that is stronger than its ordinary meaning might imply" because the word "affiliated" was used in *Catholic Bishop* where the school was "actually operated by a church." That is not what *Catholic Bishop* or its progeny embraced. If that were the case, then the phrase "affiliated with" would have no relevance as only schools "operated by" a religious institution would be exempt.

The General Counsel also suggests only those academic institutions that are *exclusively* owned, operated, and controlled by a religious organization are exempt from the Board's jurisdiction, then alternatively claims that the inclusion of the phrase "affiliated with" in *Great Falls* should be ignored as superfluous because *Great Falls* and *Bethany College* use the term "virtually synonymously" with "ownership, control, or operation." *Id.* Said another way, the General Counsel is inviting the Board to construe the phrase "affiliated with" to either mean: (1) something different than its ordinary meaning;[3] or (2) nothing at all. The General Counsel provides no authority to support this position.

The General Counsel's proffered construction would render the phrase "affiliated with" superfluous for no good reason. This proves even more strange since the phrase is set apart from "owned, operated, or controlled" by the disjunctive "or". *United States v. Moore*, 613 F.2d 1029, 1040 (D.C. Cir. 1979), cert. denied, 446 U.S. 954 (1980) (The word

---

[3] The General Counsel's proposed construction reads less like a legal argument and more like a nursery rhyme in its suggestion that a word means "just what [she chose] it to mean—neither more nor less," L. Carroll, Alice in Wonderland and Through the Looking Glass 198 (Messner 1982). The Board should reject the General Counsel's invitation to adopt a Humpty Dumpty standard to determine jurisdiction.

"or" connotes disjunction). A reference to "this or that" identifies separate alternatives. *United States v. Smeathers*, 884 F.2d 363, 364 (8th Cir. 1989) (citing *Reiter v. Sonotone Corp.*, 442 U.S. 330, 339 (1979)). Thus, "affiliated with" refers to something other than being "owned, operated, or controlled, directly or indirectly by." The General Counsel's attempt to equate the two as the same is a wholly inappropriate construction, but nonetheless demonstrates her true intent: to convince the Board to do something it has been admonished on multiple occasions not to do, which is inject itself into evaluating whether a religious institution is "religious" enough.

If the holding in *Great Falls* needed clarification or correction, as the General Counsel suggests, the D.C. Circuit could have done so at any point over the last thirteen years. That has not happened. Why? Because the precedent that undergirds *Bethany College* still means exactly what it says and exclusive ownership, operation, and control are *not* required.[4]

3. **The Board should decline the General Counsel's invitation to determine whether PSC is religious enough.**

In the General Counsel's attempt to ignore what this Board has been specifically warned not to do, as referenced previously, she also takes the position that the Board should find PSC is simply not religious *enough* to fall outside its jurisdiction:

> [PSC's] inclusion on the list of Church-affiliated institution[s] are inadequate substitutes for the type of formal agreement in *Carroll College*, especially since the University Senate of the Church sets the requisite benchmarks for affiliation, **which may or may not align with the Board's definition of affiliation**, and the institutional features it uses to decide affiliation appear to be less stringent than the Board likely envisioned in *Bethany College*.

---

[4] *See also, Catholic Bishop*, 440 U.S. at 495 (attempting to distinguish between "completely religious" and "merely religiously associated" religious academic institutions fails to adequately protect constitutional rights secured by the Religion Clauses).

*See* Opposition, p. 7 (emphasis added). It bears repeating that it is not the Board that makes that determination. The Board is to follow the law set forth by the Supreme Court and the Courts of Appeal for the Eighth Circuit and D.C. Circuit. The General Counsel has apparently decided to make herself and this body the judge, jury, and executioner of those terms and phrases that do not suit her position, which is totally misguided and arrogant to say the least.

According to the Opposition, the dispositive evidence in *Carroll College* was the college's *alleged* written agreement in its charter documents with the synod to "recognize and affirm its origin and Heritage in the concern of the [c]hurch." This argument has three fatal shortcomings.

First, there is no "statute of frauds" in the Religion Clauses of the Constitution. There is no requirement under the controlling law, nor has there ever been, that a religious academic institution must provide a specific written agreement to the NLRB to demonstrate its religious affiliation before being free from further government intrusion. Even more, the General Counsel's characterization of the record before the Board regarding PSC's and The UMC's relationship is disingenuous. If signed writings were required, PSC has provided plenty.

PSC has abundantly demonstrated its formal agreements with The UMC. The evidentiary record establishes The UMC provides millions of dollars in financial support to PSC conditioned on PSC's sustained church-relatedness.

On November 15, 2021, PSC provided the Regional Office and Division of Advice with its Institutional Report that is regularly submitted to The UMC to continue its formal affiliation, which explicitly states, "With its rich Christian heritage, the College has maintained a close relationship with The [UMC] from its inception, and it acknowledges

266109                                        6

a definite obligation and commitment to the ideas of The [UMC]." *Exhibit 2 to PSC's Petition to Revoke Subpoena*, p. 533. PSC has also provided correspondence from The UMC evidencing the existence of The UMC's formal affiliation with and its control over PSC.[5] *Exhibit 3 to PSC's Petition to Revoke Subpoena*, pp. 9-13.

Likewise, PSC's Course Catalogue leaves no credible doubt that PSC "has a rich Christian heritage [and] acknowledges [its] definite obligation to the [UMC] and maintains a close relationship with the church. The College . . . receives funding from The General Board of Higher Education and Campus Ministry of the [UMC], was created in 1877 by the Methodist Episcopal Church. . . [.]" *Exhibit 2 to PSC's Petition to Revoke Subpoena*, pp. 63-64. PSC's Bylaws explicitly reference its Methodist affiliation and acknowledge The UMC is the ultimate *owner* of PSC, given the fact that, upon dissolution of PSC's corporation, all of the assets of PSC will "revert to the General Board of Higher Education and Ministry of The United Methodist Church." *Exhibit 1 to PSC's Petition to Revoke Subpoena*, pp. 44-45.

Further, on May 27, 2022, PSC provided a sworn Declaration of Gary Mueller, Resident Bishop for the Arkansas Conference of The UMC, which unequivocally establishes the formal agreement between PSC and The UMC:

> Philander Smith College's formal and direct affiliation with The United Methodist Church is contractual in nature. More specifically, in consideration for the funding it receives from The United Methodist Church, Philander Smith College must regularly demonstrate its compliance with certain religious requirements specific to the Methodist faith—to ensure its church-relatedness—by submitting Institutional Reports and consenting to regular audits by The United Methodist Church's University Senate.

---

[5] Black's Law Dictionary defines "control" as follows: "The direct *or indirect* power to govern the management and policies of [an] entity, whether through ownership of voting securities, by contract, *or otherwise*; the power or authority to manage, direct, or oversee." Black's Law Dictionary (11th ed. 2019) (emphasis added).

. . .

> To maintain its standing as a United Methodist college, Philander
> Smith College must also, among other things: (1) hold itself out to the
> public, its students, and its faculty as a Methodist academic
> institution in printed materials, official listings, and other statements
> of self-description; (2) respect, honor, and provide the teaching of
> religion and, specifically, appropriate scholarly theological teaching
> in the Christian tradition within the curriculum; (3) respect and
> honor religious practice; (4) publicly recognize the Social Principles
> of The United Methodist Church; and (5) seek to create a community
> of scholarship and learning which facilitates social justice, which is a
> key tenet of John Wesley's theology and The United Methodist
> Church.

*Exhibit 2 to PSC's Petition to Revoke Subpoena*, pp. 7-9. This is all to say nothing of the

fact that the composition of PSC's Board of Trustees, which is tasked with "manag[ing]

*all* property, endowments, funds of College, establish[ing] polices that govern the

operation and management of the College, [and] approv[ing] the course of instruction,"

*must include* the Bishop of The UMC of the Arkansas area; a superintendent from the

Arkansas Conference of The United Methodist Church, designated by the Bishop; at least

one staff member of the Division of Higher Education of the General Board of Higher

Education and Ministry of The United Methodist Church; and a minimum of 30% of PSC's

Board of Trustees "at large members" must be members of The UMC. *Exhibit 1 to PSC's*

*Petition to Revoke Subpoena*, pp. 44-45.

 While the General Counsel and her attorneys may be entitled to their own

opinions, they are not entitled to their own facts nor should they be permitted to ignore

those facts that do not suit their aims. In the face of the undisputed evidence provided,

there is no credible argument that PSC is subject to the Board's jurisdiction. PSC has

demonstrated over and over again that it is in fact (1) "affiliated with" The UMC; (2)

directly or indirectly owned by The UMC; and (3) directly or indirectly controlled by The

UMC.

As mentioned above, the D.C. Circuit has *explicitly* warned the Board against engaging in this sort of inquiry:

> "[D]espite the best of intentions, a Board [attempting to exercise jurisdiction in religious academic institutions] would, in many cases, find itself inquiring "into the good faith of the position asserted by the clergy-administrators and its relationship to the school's religious mission. The First Amendment does not permit such inquiry. . . . It is not only the conclusions that may be reached by the Board which may impinge on rights guaranteed by the Religion Clauses, *but also the very process of inquiry leading to findings and conclusions.*

*Carroll College, Inc. v. NLRB*, 558 F.3d 568 (citing *Catholic Bishop*, 440 U.S. at 502-504. Id. (emphasis added and quotations omitted). The General Counsel's actions in this case clearly and unequivocally violate these tenets. Despite all of the evidence to the contrary, the General Counsel continues her abusive, discriminatory, and harassing inquisition of this small Methodist HBCU. Such vitriol should not be condoned or tolerated in any way by this Board. PSC has demonstrated itself to be a religious academic institution, and the First Amendment does not permit the Board to inquire further into the good faith position asserted by PSC and The UMC.

### 4.   The First Circuit's *Bayamon* decision is not controlling precedent.

The Opposition also erroneously refers to *Bayamon v. NLRB*, 793 F.2d 383 (1st Cir. 1985), as "the controlling opinion" and claims that the D.C. Circuit "mined" or "plucked" the phrase "affiliated with" from the Supreme Court's opinion in *Catholic Bishop*. See Opposition, p. 6. To be clear, a 1985 decision from the First Circuit does not supersede the more recent decisions of the D.C. Circuit, has no precedential value to the Eighth Circuit (the circuit in which PSC is located), and did not overrule the Supreme Court's opinion in *Catholic Bishop*.

In fact, *Bayamon* lacks precedential value in even the First Circuit because that en banc court was evenly divided. Writing for half of the en banc court, then-Judge Breyer explained that *Catholic Bishop* prohibited the Board from distinguishing between religious schools that primarily teach secular subjects and those that seek to inculcate religious values more expressly and overtly. *See id.* at 402-03. The very inquiry needed to make that distinction would entangle the Board in religious affairs. *See id.* Importantly, Judge Breyer observed that exercising jurisdiction over either type of school risked violating the First Amendment, for religious values may "permeate the educational process" even at a school whose "predominant" mission is providing students with a secular education. *Id.* at 401-02.

## Conclusion

For these reasons and all of the others previously provided in PSC's Petition to Revoke the Subpoena, its various position statements, and the almost 2,000 pages of documentary evidence, PSC respectfully requests that the Subpoena be revoked for lack of jurisdiction. We strongly urge the Board to take notice of the uncontroverted facts and the status of current federal law, which the General Counsel and Division of Advice have refused to do over the past fourteen months in its unwarranted attacks against this Methodist HBCU.

DATED this 18th day of August, 2022.

Respectfully submitted,

_____
J. Bruce Cross (ABN 1974028)
Brett W. Taylor (ABN 2014175)
**CROSS, GUNTER, WITHERSPOON
& GALCHUS, P.C.**
500 President Clinton Ave., Suite 200
Little Rock, AR 72201
Telephone: (501) 371-9999
Facsimile: (501) 371-0035
btaylor@cgwg.com
bcross@cgwg.com

*Attorneys for PSC*

## CERTIFICATE OF SERVICE

On August 18, 2022, I electronically filed the foregoing Response to the General Counsel's Opposition to the Petition to Revoke Subpoena Duces Tecum with the National Labor Relations Board and served the above-entitled document upon counsel for Petitioners as well as the General Counsel's Office by email at the following addresses:

Manuel Quinto-Pozos
DEATS, DURST & OWEN, PLLC
707 West 34th Street Suite 3
Austin, Texas 78705
mqp@ddollaw.com

Zachary E. Herlands
Counsel for the Acting General Counsel
National Labor Relations Board, Region 15
600 S. Maestri Place, 7th Floor
New Orleans, LA 70130
zachary.herlands@nlrb.gov

_____
J. Bruce Cross

UNITED STATES OF AMERICA
BEFORE THE NATIONAL LABOR RELATIONS BOARD

PHILANDER SMITH COLLEGE

    **and**                                          Case 15-CA-278071

ANTHONY BOLTON NEWKIRK

### ORDER[1]

Petitioner Philander Smith College's Petition to Revoke subpoena duces tecum B-1-1GJT71D is denied. The subpoena seeks information relevant to the matters under investigation and describes with sufficient particularity the evidence sought, as required by Section 11(1) of the Act and Section 102.31(b) of the Board's Rules and Regulations. Further, the Petitioner has failed to establish any other legal basis for revoking the subpoena.[2]  See generally *NLRB v. North Bay Plumbing, Inc.*, 102 F.3d 1005 (9th Cir. 1996); *NLRB v. Carolina Food Processors, Inc.*, 81 F.3d 507 (4th Cir. 1996).

Dated, Washington, D.C., October 19, 2022.

                                  GWYNNE A. WILCOX,        MEMBER

                                  DAVID M. PROUTY,         MEMBER

---

[1]  The National Labor Relations Board has delegated its authority in this proceeding to a three-member panel.

[2]  Contrary to the Employer's position, the possibility that the Board lacks jurisdiction over it because it is a religious academic institution does not provide a basis for revoking the subpoena. Sec. 11(1) of the Act provides, in relevant part, that "[t]he Board … shall at all reasonable times have access to, for the purpose of examination, and the right to copy any evidence of any person being investigated or proceeded against that relates to any matter under investigation or in question." (Emphasis added). Thus, when a charge was filed alleging that the Employer had violated the Act, the Employer became a "person being investigated or proceeded against," and therefore is subject to the Board's subpoena power.

**Exhibit G**

Member Ring, concurring:

The Charged Party is a nonprofit, historically black college founded in 1877. Its website states that it is a "United Methodist Church affiliated institution." The Supreme Court has held that the Board does not have jurisdiction over "church-operated" schools. *NLRB v. Catholic Bishop of Chicago*, 440 U.S. 490 (1979). In determining whether a particular entity is "church-operated" within the meaning of *Catholic Bishop*, the Board considers whether the institution: (a) holds itself out to the public as a religious institution, (b) is nonprofit, and (c) is religiously affiliated. *Bethany College,* 369 NLRB No. 98, slip op. at 1 (2020). The Charged Party contends that it is exempt from the Board's jurisdiction under this standard. The General Counsel, on the other hand, asserts that the Charged Party is not religiously affiliated because it "is not owned, operated, or controlled by the" United Methodist Church and "has failed to demonstrate it has any binding or formal commitment to the Church or an arm of the Church."

The exemption from NLRB jurisdiction for religiously-affiliated institutions is based on the First Amendment's guarantee of religious freedom. As the Board recognized in *Bethany College,* the important rights protected by the Act "are subordinate to those enshrined in the Constitution where there is a potential conflict between the two." 369 NLRB No. 98, slip op. at 4. In this regard, the Supreme Court has emphasized that "[i]t is not only the conclusions that may be reached by the Board which may impinge on rights guaranteed by the Religion Clauses, but also the very process of inquiry leading to findings and conclusions." *Catholic Bishop,* 440 U.S. at 502. For these reasons, the Board should proceed with caution before asserting jurisdiction over entities raising a claim of exemption under *Catholic Bishop.*

The Charged Party asserts that the General Counsel has not proceeded with appropriate caution in determining that the Board has jurisdiction over it and has instead failed to faithfully apply *Bethany College.* See also *Carroll College v. NLRB*, 558 F.3d 568, 573-574 (D.C. Cir.

2009) (finding that college was affiliated with the United Presbyterian Church where an agreement required the college to "recognize and affirm its origin and heritage in the concern of the Church" and rejecting the view that religious affiliation may only be shown by evidence that the church sponsored the college, owned its campus, or had a right of ultimate control over it). In my view, the Charged Party has raised a substantial question regarding the absence of Board jurisdiction. However meritorious the Charged Party's contentions may be, however, they do not provide a basis for revoking the investigative subpoena at issue here under our precedent.  See, e.g., *G2 Secure Staff, LLC,* Case 12-CA-111844 (2015) (unpublished order).  In the absence of a three-member majority of the Board willing to reconsider that precedent, I apply it for the purpose of deciding this case.  Accordingly, for these reasons, I concur in the order denying the petition to revoke.

JOHN F. RING,     MEMBER

| | |
|---|---|
| **From:** | Raby, Jordan |
| **To:** | Bruce Cross; Brett Taylor |
| **Subject:** | Philander Smith 15-CA-278071 |
| **Date:** | Friday, October 21, 2022 9:57:00 AM |
| **Attachments:** | Board Decision.pdf |
| | SUB.15-CA-278071.Subpoena DT.pdf |

Dear Mr. Cross and Mr. Taylor,

As you may know, the Board issued the attached Order denying the Employer's Petition to Revoke the Region's subpoena B-1-1GJT71D. As such, I am emailing you to request that the Employer comply with the Region's subpoena and provide the documents requested therein no later than Friday, November 4, 2022. If you have any questions or concerns, please do not hesitate to contact me directly.

Thanks,

Jordan Raby, Field Examiner
National Labor Relations Board
Region 15
600 South Maestri Place
New Orleans, Louisiana 70130-3414
Phone: (504) 321-9492
Fax: (504)589-4069

**In accordance with GC Memorandum 20-01, the NLRB now requires that all documents submitted in connection with unfair labor practice and representation cases be submitted electronically through the NLRB's E-Filing system at www.nlrb.gov. Please see the links below for more information on this requirement:**

1. Summary of the e-filing requirement
2. Step-by-step written instructions and the Agency's Electronic Filing Terms and Conditions
3. Step-by-step video instructions
4. Frequently Asked Questions

Additional assistance: E-Filing@NLRB.gov

**CONFIDENTIALITY NOTICE:** This e-mail and any attachments are for the exclusive and confidential use of the intended recipient. If you are not the intended recipient, any interception, copying, distribution, disclosure or use of this transmission or information contained in it is strictly prohibited. If you have received this in error, please delete it and any attachments from your system without copying them and notify me immediately by return e-mail so that our records can be corrected. Thank you.

**Exhibit H**