UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS



FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

FEB 0 9 2023

TAMMY H. DOWNS, CLERK
By: _____ DEP CLERK

NATIONAL LABOR RELATIONS BOARD,

Applicant

v.

PHILANDER SMITH COLLEGE,

Respondent

Case No. 4:23-mc-1-JM

## MEMORANDUM IN SUPPORT OF
## APPLICATION FOR ORDER ENFORCING SUBPOENA DUCES TECUM

The National Labor Relations Board (the Board), an independent agency of the United States Government, submits this memorandum in support of its application for an order requiring compliance with its subpoena duces tecum served upon Respondent Philander Smith College.

### A. This Court has Subject Matter Jurisdiction to Grant the Board's Application

Section 11(1) of the National Labor Relations Act, 29 U.S.C. § 161, et seq., (the Act), grants statutory authority to the Board for the exercise of subpoena power, which is similar to that of other administrative agencies. The intent of Congress to confer such authority is clear. See S.R. No. 573, 74th Cong. 1st Session; Section 6(c) Administrative Procedures Act, 5 U.S.C. Sec. 556(c). The courts have long upheld the power of administrative agencies to issue subpoenas. *Oklahoma Press Publishing Co. v. Walling*, 327 U.S. 186, 66 S. Ct. 494 (1945); *NLRB v. G.H.R. Energy Corp.*, 707 F.2d 110 (5th Cir. 1982).

District courts are empowered to order enforcement of subpoenas issued by the Board by virtue of Section 11(2) of the Act (29 U.S.C. § 161(2)).[1] In the instant matter, the inquiry pursuant

---

[1] Section 11(2) of the Act provides:

- 1 -

to which the Board issued and caused the subpoena to be served has taken place within this judicial district at Respondent's business in Little Rock, Arkansas.

In view of the above, the Court has subject matter jurisdiction to order compliance with the Board's subpoena duces tecum and venue is proper.

### B. Unfair Labor Practice Charge and Facts Demonstrating the Need for the Court's Enforcement of the Investigative Subpoena Duces Tecum

On June 4, 2021, Anthony Bolton Newkirk, acting on behalf of himself and other individuals, filed an unfair labor practice charge in Case 15-CA-278071. The charge was amended on January 21, 2022. (Application Exhibits A and B). The charge, as amended, alleges Respondent violated Section 8(a)(1) (29 U.S.C. § 158(a)(1))[2] of the Act by discharging employees Anthony Newkirk, Edwina Mosby, and Michael Turley in retaliation for their protected concerted activities.

When the Board's Little Rock Resident Office was unable to obtain certain relevant documents from Respondent that will facilitate the completion of its administrative investigation, on July 18, 2022, the Board's Resident office issued investigative subpoena duces tecum B-1-1GJT71D requiring the production of certain documents by August 2, 2022. (Application Exhibit C). The subpoena sought certain documents relating to Respondent's alleged discrimination against Newkirk, Mosby, and Turley summarized as follows:

1) Respondent's employee handbook;

---

In case of contumacy or refusal to obey a subpoena issued to any person, any United States District Court or the United States courts of any Territory or possession, within the jurisdiction of which the inquiry is carried on or within the jurisdiction of which said person guilty of contumacy or refusal to obey is found or resides or transacts business, upon application by the Board shall have jurisdiction to issue such person an order requiring such person to appear before the Board, its member, agent, or agency, there to produce evidence if so ordered, or there to give testimony touching the matter under investigation or in question; and any failure to obey such order of the court may be punished by said court as a contempt thereof.

[2]Sec. 8. [§ 158.] (a) [Unfair labor practices by employer] It shall be an unfair labor practice for an employer--(1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 7 [section 157 of this title].

2) The complete personnel file for employees Anthony Newkirk, Edwina Mosby, and Michael Turley;

3) The complete disciplinary files for employees Anthony Newkirk, Edwina Mosby, and Michael Turley;

4) Termination documents issued to employees Anthony Newkirk, Edwina Mosby, and Michael Turley;

5) Documents which reflect the following information related to the discharge of employees Anthony Newkirk, Edwina Mosby, and Michael Turley: date of discharge, reasons for discharge, the date the Respondent determined it would discharge these employees, the name and titles of the individual(s) who notified these employees, the name and titles of the individual(s) who notified these employees of their discharge, and all information relied upon in determining that it would discharge these employees;

6) All documentation the Respondent used or relied upon in determining which employees would be laid off during the 2020-2021 school year;

7) Documents reflecting all options considered by the Respondent in lieu of discharging or laying off Anthony Newkirk, Edwina Mosby, and Michael Turley, including but not limited to furloughs, salary reductions, or layoffs;

8) Documents which reflect the name and titles of all employees who have been discharged from employment from January 1, 2019 to January 1, 2022 for the same or similar reason(s) that Anthony Newkirk, Edwina Mosby, and Michael Turley were discharged, including the date of discharge, circumstances surrounding the discharge, the reason why the employee was selected for discharge, the name and title of the person who made the decision to discharge these employees, and the name and title of the individual who notified these employees of their discharges;

9) Documents which reflect the name and titles of any employee who experienced an adverse employment action (i.e., furlough, salary reduction, layoff/recall, etc.) for the same/similar reason(s) Anthony Newkirk, Edwina Mosby, and Michael Turley, including the specific type of adverse employment action which was issued, the date of the adverse employment action, the circumstances surrounding the adverse employment action, the reason why the employee was selected for the adverse employment action, the name and title of the person who made the decision to issue an adverse employment action, and the name and title of the individual who notified the employees of the adverse employment action;

> 10) Documents which reflect all faculty vacancy postings or other efforts to fill any positions which were vacated by any faculty during the 2020-2021 school year, including but not limited to documents which reflect efforts made by Respondent to seek the return of former faculty members to fill these positions;
>
> 11) For all employees hired by Respondent between May 1, 2020, and December 31, 2021, documents reflecting all the names, titles, dates of hire, and reason for employee's hire;
>
> 12) For all employees employed by Respondent from May 1, 2020, to December 21, 2020, documents reflecting the names, titles, addresses, phone numbers, and email addresses for all employees of Respondent.

Respondent refuses to produce the subpoenaed documents; and continues to do so at this time.

The failure of Respondent to produce the subpoenaed documents, which are relevant and material to the Board's unfair labor practice investigation, constitutes contumacious conduct within the meaning of Section 11(2) of the Act.[3] Furthermore, Respondent's conduct has impeded and continues to impede the unfair labor practice investigation being conducted by the Board's Little Rock Resident Office and is preventing the Board from carrying out its duties and functions under the Act.

### C. **The Board's Application for Subpoena Enforcement is Proper**

The Board may issue subpoenas requiring both the production of evidence and testimony during the investigatory stages of an unfair labor practice proceeding. *NLRB v. North Bay Plumbing*, 102 F.3d 1005, 1008 (9th Cir. 1996). Accord, *NLRB v. Carolina Food Processors, Inc.*, 81 F.3d 507 (4th Cir. 1996). The courts have, in fact, interpreted Section 11 to permit the Board to obtain "everything it [could] seek[ ] from an order compelling discovery" under the Federal Rules of Civil Procedure. *NLRB v. Interstate Material Corp.*, 930 F.2d 4, 6 (7th Cir. 1991). The Board's subpoena enforcement proceedings, authorized by Section 11(2) of the Act, are summary in nature.

---

[3] 29 U.S.C. § 161(2).

See *NLRB v. Frazier*, 966 F.2d 812, 817 (3rd Cir. 1992). Section 11(2) specifically authorizes the Board to make an "application" to the district courts for a summary disposition on the sole issue of whether or not to enforce the Board's subpoenas.

It is well established that in a Section 11(2) enforcement case, the district court should treat the Board's application as a dispositive matter, and not as a pre-trial discovery matter. *Id.* at 817-818. For, as one court recognized, "otherwise, the enforcement proceedings may become a means for thwarting the expeditious discharge of the agency's responsibilities." See *NLRB v. Interstate Dress Carriers, Inc.*, 610 F.2d 99, 112 (3rd Cir. 1980). "[T]he question of whether or not to enforce the subpoenas is the only matter before the court." *NLRB v. Frazier*, 966 F.2d at 818. Indeed, the limited nature of this jurisdictional grant to the district court contained in Section 11(2) is a consequence of Congress' recognition of the importance of providing the Board with a means of prompt enforcement of its subpoenas so that it can effectively carry out its statutory mission.

Consistent with the authorization contained in Section 11(2) of the Act and the need to avoid unnecessary delay of the Board's processes, the Board's practice has long been to file an application with the district court to enforce the Board's subpoenas. Section 11(2) specifically provides that a subpoena enforcement proceeding is commenced by an application, not by complaint or motion and notice of motion. As explained long ago by the Sixth Circuit in *Goodyear Tire & Rubber Co. v. NLRB*, 122 F.2d 450 (6th Cir. 1941), in a case challenging the Board's failure to serve a summons and complaint in a subpoena enforcement proceeding:

> [T]he proceedings plainly are of a summary nature not requiring the issuance of process, hearing, findings of fact, and the elaborate process of a civil suit. We think the procedure to be followed in the district court is controlled by Section 11(2) of the Act . . . .
>
> It is significant that the statute calls for an "application" rather than a petition, an "order" rather than a judgment, and that it details no other procedural steps. Obviously, if the enforcement of valid subpoenas, the issuance of which is a mere incidence in a case, were to require all of the formalities of a civil suit, the

administrative work of the Board might often be subject to great delay. We think that such was not the intention of Congress.

*Id.* at 451; See also *Interstate Dress Carriers*, 610 F.2d at 112; and *U.S. v. Vivian*, 224 F.2d 53, 57 (7th Cir. 1955).

In recognition of the special nature of the Board's subpoena enforcement proceedings, courts have not required the Board to strictly comply with the requirements of all matters of civil procedure. F.R.C.P. 81(a)(3) provides the authority by which district court judges, in agency subpoena enforcement proceedings, allow a less formal application of the federal rules of civil procedure.[4] See also F.R.C.P. 81(a)(3) advisory committee note of 1946 (district court need not apply federal rules when to do so "may conflict with the summary determination desired."); *United States v. Southeast First Nat'l Bank*, 655 F.2d 661, 663 (5th Cir. 1981)(Unit B).

Accordingly, consistent with Section 11 of the Act, the Board's application seeks to obtain an order directing Respondent to comply with the Board's subpoena duces tecum.

### D. This Court Should Grant the Board's Application for Subpoena Enforcement Because the Subpoena Seeks Relevant Information

The Supreme Court has made it clear that the standard to be met in a proceeding to enforce an administrative subpoena is a strictly limited one. The seminal case is *Endicott Johnson v. Perkins*, 317 U.S. 501, 509 (1943), wherein the Supreme Court held that since the evidence sought by a subpoena issued by the Secretary of Labor under the Walsh-Healy Public Contracts Act was not "plainly incompetent or irrelevant to any lawful purpose," it was the duty of the district court to order its production. Thereafter, in *Oklahoma Press Publishing*, 327 U. S. at 209, the Court applied the same principles to the Fair Labor Standards Act, holding that so long as the

---

[4] F.R.C.P. 81(a)(3) provides, in pertinent part, that the federal rules of civil procedure apply to agency subpoena enforcement proceedings, except as otherwise provided by statute, the rules of the district court or by order of the court in the proceeding.

investigation was for a "lawfully authorized purpose, the documents sought were relevant to the inquiry and the demand was reasonable," the subpoena must be enforced. Further, in a case dealing with the investigative powers of the Federal Trade Commission, *United States v. Morton Salt Co.*, 338 U.S. 632, 652 (1950), the Court once again enunciated the standard: ". . . it is sufficient if the inquiry is within the authority of the Agency, the demand is not too indefinite and the information sought is reasonably relevant."

A subpoena from the Board is subject to limited judicial review. A district court will enforce a Board subpoena if the investigation is legitimate, the subpoena is not overly broad, and the records or testimony sought are relevant to the inquiry. *NLRB v. North Bay Plumbing*, supra; and *G.H.R. Energy Corp.*, 707 F. 2d at 110.

The burden on a party seeking to evade compliance with a subpoena is not a meager one. The party must show that the subpoena serves purposes outside the realm of authority of the issuing agency. If this threshold is not reached, the court should enforce the subpoena. *NLRB v. Frazier*, 966 F. 2d at 818.

In applying these standards to the present case, it must first be noted that the disputed subpoena clearly falls within the investigative authority of the Agency. The subpoena is directed entirely to the Board's efforts to obtain information relevant and material to the ongoing unfair labor practice investigation. In the present case, the Board must make a determination as to: 1) whether Newkirk, Mosby, and Turley engaged in protected concerted activity; 2) whether Respondent was aware of the protected concerted activity; 3) whether Respondent harbored animus towards the protected concerted activity; and 4) whether Respondent would have discharged Newkirk, Mosby, and Turley absent its knowledge of their protected concerted activity. In order to make these determinations, the Agency must have all documentation or evidence that

could support Respondent's bases for discharging Newkirk, Mosby, and Turley, as well as documentation or evidence that would infer discriminatory motives.

Without this subpoena the General Counsel cannot properly investigate and decide the unfair labor practice charge allegations relating to Newkirk, Mosby, and Turley. It is fundamental to the purposes of the Act for the General Counsel to, at the very least, be able to effectively investigate alleged violations specified in a pending unfair labor practice charge. Thus, the information requested is clearly within the Board's authority, definite, and clearly relevant. *United States v. Morton Salt Co.,* supra. Further, Respondent's objections to the subpoena duces tecum, as set forth in its petition to revoke, were considered by the Board and rejected. (Application Exhibits H and I).

### E. Respondent's Petition to Modify or Revoke the Subpoena Was Properly Denied by the Board

Generally, the subpoena seeks production of documents relating to Newkirk's, Mosby's, and Turley's employment history with Respondent, as well as the bases and motivations for terminating their employment. Respondent sought to avoid producing these relevant documents by filing a petition to revoke the subpoena with the Board wherein it raised various arguments supporting its position. The Board considered Respondent's contentions and issued a clear and unequivocal Order denying the petition to revoke because the subpoena sought relevant information and Respondent failed to establish any valid basis for revoking the subpoena (Application Exhibit I). Despite this Order by the Board, Respondent refuses to produce responsive documents.

### F. The Board Should Be Reimbursed For the Costs of this Subpoena Enforcement Proceeding

The Board is entitled to be reimbursed for the costs incurred in initiating and prosecuting this subpoena enforcement action. Respondent has failed to interpose any legitimate objections to

compliance with the subpoena duces tecum. Under these circumstances, the Board is entitled to an award of cost and attorneys' fees, at prevailing market rates, incurred in initiating and prosecuting this subpoena enforcement action. See *NLRB v. Coughlin*, 2005 WL 850964, 176 LRRM at 3197, 3202 (S.D. Ill. 2005); *NLRB v. Cable Car Advertisers*, 319 F.Supp.2d 991, 999-01 (N.D. Cal. 2004) (holding that because § 11 of the Act is silent on the matter of fees and costs, the federal rules of civil procedure, including Rule 37, are applicable to judicial enforcement actions pursuant to Rule 81(a)(3) and (5)).; *Baywatch Security and Investigations*, 2005 WL 1155109 at *3 (S.D. Tex. 2005); and NLRB v. *A.G.F. Sports, Ltd.*, 1994 WL 50779, 146 LRRM 3022, 3024 (E.D.N.Y. 1994).

### H. <u>Conclusion:  Respondent Should be Required to Honor the Board's Subpoena</u>

In view of Respondent's contumacious conduct and for the reasons set forth above, the Board respectfully requests:

1. That an order to show cause issue directing Respondent to appear before this Court on a date specified in the order and to show cause why an order should not issue directing it to produce the subpoenaed documents described above;

2. That, after considering arguments in response to the order to show cause, this Court issue an order requiring Respondent to obey the Board's subpoena duces tecum by providing the subpoenaed documents to the Board's Little Rock Resident Office within ten (10) calendar days of the entry of the Court's Order; the subpoenaed documents to be delivered to the Board's Little Rock Resident Office at National Labor Relations Board, Region 15, 700 W. Capitol Avenue, Suite 4429, Little Rock, Arkansas 72201;

3. That Respondent be required to reimburse the Board for the costs and attorney's fees (calculated at the prevailing market rate) incurred in initiating and prosecuting this subpoena enforcement action;

4. That, upon failure of Respondent to comply with the Court's Order, the Court reserves the right to impose contempt sanctions following a motion by the Board; and

5. That the Applicant, National Labor Relations Board, have such other and further relief as may be necessary and appropriate.

Dated: February 9, 2023

Respectfully submitted,

*Grayson Hinojosa*
Attorney for Applicant NLRB
Grayson Hinojosa
National Labor Relations Board
700 W. Capitol Avenue, Suite 4429
Little Rock, AR 72201
Telephone (501) 508-7092
Facsimile (501) 324-5009
Grayson.hinojosa@nlrb.gov
Arkansas Bar No. 2014251